Anna Teal et al. v. C. L. Terrell et al.

1. Res Adjudicata.—As a general principle, the judgment or decree of a court of competent jurisdiction is not only final as to the matters actually determined thereby, but also upon all matters properly involved in the issue passed upon and determined by the court, and that all matters put in litigation by a previous suit, and which could have been adjudicated therein, are concluded by it; yet it cannot be so held, where the record clearly shows that the matter in question was not in fact passed upon by the court, or where, under the pleadings and verdict, it could not have been decided adversely to the party against whom the judgment is claimed to operate as *res adjudicata.*

2. Administrator cannot convey land in payment of attorney's fee.—An administrator has no power to convey land of his intestate to an attorney in payment of an attorney's fee; nor will an approval of such conveyance by the Probate Court render it valid.

3. After-acquired title in trespass to try title.—A title acquired after the institution of suit, is not admissible to sustain the plaintiff's suit in trespass to try title.

4. Parties—Joint Owners.—An alleged joint title, in trespass to try title, is not supported by titles in severalty to the individuals constituting the plaintiffs.

Appeal from Victoria. Tried below before the Hon. T. C. Barden.

This suit was brought August 30, 1872, by C. L. Terrell, John W. Stevenson, and his wife Frances, who, before her intermarriage with Stevenson, was the widow of Barnes Simms, deceased, and by James, Marcellus, Robert, and Alice Simms, and against Anna Teal, who is the widow of Peter Teal, deceased, and against the children of said Peter and Anna, viz., Mary, Kate, James Teal, and Julia Teal Murphy, with her husband.

John B. Sideck, from whom both parties derive title, obtained two grants, each for a league of land. One grant was made by the government of Coahuila and Texas in 1830; the other was made to him in 1834, as a colonist of Power and Hewitson's colony. The first grant was for what is called "the square league"; the other was for what is called "the long league." Both fronted on the San Antonio river. The long league ran across the square one, and extended back behind it.

Sideck died between 1842 and 1846, leaving one child and heir, Mrs. Sevier. Peter Teal was Sideck's nephew; and after Sideck's death he occupied a part of his land, which part lay within the "long league" grant, and was supposed to be also entirely included within the lines of the "square league" grant, and nearly all of it was in fact so included. Teal claimed this land, or an interest in it, by donation from Sideck. Teal died about 1846, and in that year Mrs. Sevier brought suit, by trespass to try title, against Mrs. Teal, his widow and administratrix, to recover the land. Mrs. Teal pleaded not guilty and prescription; but the defense specially set up, and the only one relied on, was that the land belonged to Sideck's estate; that Sideck acquired it by the two grants aforesaid, of 1830 and 1834; and that Sideck, by deed of donation, in December, 1832, had given the land in equal shares to Peter Teal and to his (Sideck's) daughter, the plaintiff, and that thereby Peter Teal became entitled to the undivided one-half of the land. She then prayed for partition, and that in the division there might be assigned to the plain-

tiff the part she had occupied and cut timber upon, &c., and to herself might be assigned the part that included her homestead, &c.

This deed of donation was made in 1832, when Sideck held only the square league. The land described in plaintiff's petition appears to be the "long league"; but after this answer was put in, the litigation appears to have been confined to the question whether Teal was entitled to half the square league by virtue of that donation. The defendant admitted that the plaintiff was Sideck's legitimate daughter, and admitted that the grants of 1830 and 1834 vested in Sideck the titles described in them, and that they were valid grants. The deed of donation was introduced in the statement of facts, with the declaration that "it is the donation under which the defendant claims one undivided half of all the lands included within the lines of said grant." The court instructed the jury, that the plaintiff was entitled to the whole tract, unless her father had donated a part of it to Teal, &c.; and no instruction contrary to that was requested. The jury found "for the defendant one undivided half of the league in controversy." Upon this verdict, judgment was rendered that Mrs. Teal recover one undivided half of the square league, and one-half of the long league, so far as it falls within the lines of the square league, no mention being made in the judgment of that part of the long league lying outside of the square league, or of plaintiff's rights. By the same judgment or decree, commissioners were appointed to divide the land within the lines of the square league, assigning one-half to Mrs. Sevier and one-half to Mrs. Teal.

The case was brought to this court and affirmed; and in February, 1872, the final decree of partition was rendered in the District Court. This decree confirmed the commissioners' division of the land within the lines of the square league, and vested the title in the respective parties.

When the lines of the square league, and of this division of it, were run out, it was found that the house of Terrell (who

claimed under the Sevier title, and who is one of the plaintiffs) was upon the land that fell to Mrs. Teal, and Mrs. Teal's house was unexpectedly found to be on that part of the " long league " which fell outside of the lines of the square league; and hence this suit, which was brought for that part of the "long league" which lies outside of the square league, and is in the ordinary form of trespass to try title.

The defendants pleaded not guilty, limitation of ten years, and the former judgment.

On the trial, plaintiffs exhibited the grant for the long league to John B. Sideck, as a colonist of Power and Hewitson's colony, of date 28th October, 1834.

They showed that Frances Sevier was daughter and sole heir of the grantee, Sideck; and that he died before January 1, 1846.

Deed from Mrs. Louisa Sevier and husband, E. G. Sevier, made in 1851, to Barnes Simms and two others, for the two middle quarters of said grant, and evidence of transfer to plaintiff, C. L. Terrell, from the grantees in said deed other than Simms.

Deed from Mrs. Louisa Sevier and husband, of date 1860, for 650 acres of the lower one-quarter of said league, and transfers of same to plaintiff, C. L. Terrell.

That Barnes Simms was dead, and heirship as alleged in the petition.

Deed from E. G. Sevier, as administrator of his wife, Mrs. Louisa Sevier, for the upper quarter of said league, to A. B. Peticolas, reciting that said E. G. Sevier had contracted with one James Martin, an attorney at law, by which he was to have the upper one-quarter of said league for certain professional services; that said services had been performed, in part, about the title to this land; and that said Peticolas held Martin's contract. This deed was also approved and confirmed by the Probate Court; and deed from Peticolas to plaintiff, C. L. Terrell.

That Louisa Teal died prior to the year 1864, leaving the

children named in the petition as heirs, four of whom are minors.

That defendant, Anna Teal, was widow of Peter Teal; and that the other defendants are children of Peter and Anna Teal.

The transcript of the record in Sevier *v.* Teal was then read, a synopsis of which is given above, in the general statement.

Testimony was introduced, showing the location of the two grants; the long league and its conflict with the older grant; the petition made under the Sevier *v.* Teal decree; the situation with reference to the conflicting lines of the two grants and the partition lines, of the improvements or houses in which the respective claimants resided pending the litigation in the former suit, &c.

The court instructed the jury: "That the legal effect of the judgment in the case of Sevier and Wife *v.* Teal, decided by the District Court of Goliad county, was to establish the title of Peter Teal's heirs to the one-half of the square league, and to establish the title of the heirs of Louisa Sevier to the other half of the square league, and to all of the long league not included within the limits of the square league; and as the period of ten years has not elapsed after the date of that judgment, when this suit was instituted, the defendants can hold no part of the land in controversy under their plea of limitation, if you find, from the evidence, that the land sued for is that part of the long league not included within the lines of the square league."

The jury returned a general verdict for the plaintiffs, for the land described in their petition, on which judgment was rendered. Motion for new trial having been overruled, the defendants, Teal *et al.*, appealed.

*Philips, Lackey & Stayton,* for appellants.—There are two questions which we desire to present in this case:

1. Is the judgment rendered in the District Court for

Goliad county on the 25th of February, 1869, a bar to this suit? The present suit is not brought by the children of Mrs. Sevier, some of whom are yet minors; therefore, the plaintiffs cannot avail themselves of their minority to avoid the fact that this suit was not instituted within one year after the affirmance of the judgment of the District Court of Goliad county by this court.

The minority of the children of Mrs. Sevier, under the statute, could avail them alone; for the suspension of the running of the time within which the second suit should be brought is for their benefit, and for the benefit of no other person.

All of the land in controversy, except the upper quarter thereof, which the plaintiff Terrell claims through a transfer made by Sevier as the administrator of the estate of his wife, is claimed by conveyances made by Sevier and his wife pending the suit instituted in 1846; and the parties thus holding are barred from their second suit, they not laboring under the disabilities of coverture or minority; consequently, as to the three lower quarters of the land, we have the naked question of the effect of the judgment rendered on the 25th of February, 1869, to consider.

The plaintiffs in this suit, being privies in estate, by title acquired from the plaintiffs in the former suit, pending the same, are as much bound thereby as though they had actually been parties thereto.

The first question in this branch of the case is,—What were the issues made by the pleadings of the parties in the former suit?

That those through whom the plaintiffs in this suit claimed title, in their petition in the former suit, and in the amendments made thereto, up to the very day that the trial commenced, claimed and sought to recover the identical land in controversy in this suit, cannot be questioned; nor can it be pretended that they ever abandoned any part of the cause of action set out in their original petition.

The plea of "not guilty," therein pleaded by the defendants, unquestionably put in issue everything contained in the plaintiffs' pleadings in that suit; (Bigelow on Estoppel, 92; King v. Chase, 15 N. H., 9; Fisk v. Miller, 20 Tex., 581; 32 Cal., 176;) and parol testimony could not be introduced to controvert that fact.

We hold that the former judgment is a bar to the present suit; for the rule is, that whatever has been once adjudicated, or which, in a suit pending, under the pleadings might have been adjudicated, cannot be heard again. The rule is well expressed by Justice Lipscomb in the case of Foster v. Wells, 4 Tex., 103, in which, using the language of another court, he says: "With respect to judgments properly so called, i. e., those solemn decisions of courts of justice, made in the exercise of their rightful jurisdiction, after giving to the parties an opportunity to be heard, and upon due deliberation, the law, proceeding upon the maxim that interest Reipublicæ ut sit finis litium, will regard them as conclusive upon all points directly involved in them, and necessarily determined; and whether the tribunals rendering them are clothed with limited or general powers, whether they are courts of record or otherwise, makes no sort of difference."

So long as they act within the sphere which has been assigned, their adjudications are binding upon the parties in all future controversies relating to the same matters.

And in the same case, quoting from 1 Johnson's Cases, 436, the same learned judge says: "The principle, however, extends further. It is not only final as to the matter actually determined, but as to every other matter which they might have had decided."

In the case of Weathered v. Mays, 4 Tex., 388, and in Johnson v. Murphy, 17 Tex., 217, the same judge, for the court, announced the same rule of law.

In the case of Hatch v. Garza, 22 Tex., 187, Justice Wheeler, delivering the opinion of the court, followed the same:

rule, and cited the above cases with approbation; and such has been the unbroken chain of decision in this State.

The same rule is announced in the following authorities: 2 Phillips' Ev., 29; Embury *v.* Conner, 3 Comst., 522; Rogers *v.* Higgins, 57 Ill., 244; Schmidt *v.* Zahandorf, 30 Iowa, 498; Parkhurst *v.* Sumner, 23 Vt., 538; Hollis *v.* Morris, 2 Harring, 128; Mervine *v.* Parker, 18 Ala., 241; Stewart *v.* Dent, 24 Mo., (3 Jones,) 111; Barnes *v.* Cunningham, 9 Rich. Eq., (S. C.,) 475; McDowall *v.* McDowall, 1 Bailey's Eq., 324; Aurora City *v.* West, 7 Wall., 102; Dynaher *v.* Prentiss, 22 Wis., 311; Boston *v.* Haynes, 33 Cal., 31; People *v.* San Francisco, 27 Cal., 655; Harris *v.* Harris, 36 Barb., 574; Heller *v.* Jones, 4 Binn., 61; Himes *v.* Jacobs, 1 Penn., 152; Fischli *v.* Fischli, 1 Blackf., 360; Morgan *v.* Plumb, 9 Wend., 287; Freeman on Judgments, sec. 272.

It is true, that the judgment does not, upon its face and in terms, vest the title to the lands in controversy in the defendant; yet, in the absence of a decree in terms adjudicating the land to the plaintiffs, such is the effect of the judgment as a conclusion of law. The plaintiffs were the actors, and the silence of the judgment upon any issue presented by their pleadings is equivalent to a denial of the right sought to be enforced. The plaintiffs, not only by their pleadings, but by the evidence by them introduced in the trial of the cause, presented the question of their title to the identical lands now in suit for adjudication.

In the case of Johnson *v.* Murphy, 17 Tex., 217, the plaintiffs sued upon a note and mortgage given to secure the payment of the note, and prayed for a judgment for the debt, and for the foreclosure of his lien; a judgment was rendered for the amount of the note, interest, and costs, and an execution was awarded, but no decree was rendered foreclosing the mortgage lien; suit was afterwards brought to foreclose the mortgage, and the defendant pleaded the former judgment in bar of the suit. In rendering the opinion in the case, Justice Lipscomb said: "The appellant's first defense,

set up in his answer, was that the matter sued for in this suit is identically the same that was sued for in the former suit, and it is certain that the mortgage lien was put in litigation in the former suit, and, for aught appearing, was adjudicated. The question of *res adjudicata* was discussed very fully by this court in the case of Foster *v.* Wells, 4 Tex., 101, and the American cases pretty generally examined; and we have no doubt that the judgment of a court of competent jurisdiction is a bar to any suit for the same subject-matter put in litigation in a former suit, and the presumption is that every matter that could have been adjudicated in the former suit was before it, and is concluded by the judgment; and this presumption is much stronger when the pleadings in the former suit show that it was presented in the suit for adjudication."

In the case of Rice *v.* Garrett, 12 La. Ann., 755, and in Spencer *v.* Banister, 12 La. Ann., 766, it was held, that where a defendant in an injunction suit prayed for damages against the principal and sureties in the injunction bond, as well as for dissolution, and the judgment dissolving the injunction was silent on the subject of damages, that such judgment was equivalent to a rejection of the claims for damages, and that it was a complete bar to a second suit for the damages. (See, also, Cunningham *v.* Harris, 5 Cal., 81.)

In the case of Keokuk County *v.* Alexander, 21 Iowa, 377, it was held, that if items of account specifically identified, and embraced in the cause of action in a former suit, and for some reason, although known to exist, were overlooked and not considered, that they could not be the ground for a second suit.

In the case of Le Guen *v.* Gouverneur, 1 Johns. Cases, 436, the reason of the rule is well expressed by Radcliffe, J., as follows: " The general principle, that the judgment or decree of a court possessing competent jurisdiction shall be final, as to the subject-matter thereby determined, is conceded on both sides, and can admit of no doubt. The principle, however, extends further. It is not only final as to the mat-

ter actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided. The reasons in favor of this extent of the rule appear to me satisfactory; they are founded on the expedience and propriety of silencing the controversies of parties, and of accomplishing the ends of justice by a single and speedy decision of all their rights. It is evidently proper to prescribe some period to controversies of this sort; and what period can be more fit and proper than that which affords a full and fair opportunity to examine and decide all their claims? It requires no more than a reasonable degree of vigilance and attention. A different course might be dangerous, and often oppressive."

In the same case Chancellor Kent says: "Every person is bound to take care of his own rights, and to vindicate them in due season and in proper order. This is a sound and salutary principle of the law."

Mr. Justice Kennedy, in Marsh v. Pier, 4 Rawle, 288, says: "But a judgment of a proper court, being the sentence or conclusion of the law upon the facts contained in the record, puts an end to all further litigation on account of the same matters, and becomes the law of the case, which cannot be changed or altered, even by the consent of parties; and it is not only binding upon them, but upon the courts and juries ever afterwards, so long as it shall remain in force and unreversed."

In the case of Thompson v. McKay, 41 Cal., 227, it was held, that the omission of a court to award relief prayed for, is an adjudication, in effect, that the complainant is not entitled thereto.

If the adjudication of the question is necessarily involved in the judgment, it is immaterial whether it was litigated or not. (Barker v. Cleveland, 19 Mich., 230.)

In the case of Schmidt v. Zahandorf, 30 Iowa, 498, it was held, that if certain claims be put in issue by the pleadings, and not withdrawn or dismissed, they will be treated as *res*

*adjudicata,* and the opposite party entitled to judicial immunity from another action therefor, although the original judgment recites that no evidence was introduced in respect thereto, and that the same were therefore not considered by the court.

If we entirely disregard the parties, as we may, and look to the public good, and to the duty of the government to the citizen alone, such must be the true rule. It is the duty of the State to create and maintain tribunals in which the rights of the citizen may be determined and protected. This necessarily involves a heavy expense and inconvenience to the public; and parties cannot complain, if they have once had an opportunity, in the tribunals thus created and maintained, to present for adjudication and settlement their respective rights,—if by negligence, or any other cause, such as would not invalidate the judgment therein rendered, they fail to secure all that they ask in their pleadings, or even, upon the facts, may have been entitled to,—if, when they bring the second suit, upon the same cause of action, they are told that they have had their day in court, and that the courts are forever closed to a relitigation of the same matter.

We hold, that to avoid the effect of the former judgment, the cause having been tried upon its merits, in a court of competent jurisdiction, it is incumbent upon the plaintiffs at least to show that so much of their original cause of action as set up title to the lands now in controversy, was withdrawn or abandoned before the commencement of the former trial; and it may, under the facts in this, be questioned if even that could avail them.

II. Did the court err in admitting in evidence the deed from E. G. Sevier, as the administrator of the estate of his deceased wife, to A. B. Peticolas, and in refusing to instruct the jury that said deed, and the confirmation thereof, and the chain of title derived thereunder, did not pass title to the plaintiff Terrell for the lands described in said deed?

The land was claimed by Mrs. Sevier by inheritance from

her father, and was conveyed by the administrator to A. B. Peticolas as a fee for services which he had rendered as an attorney for the estate of Mrs. Sevier.

That an administrator cannot convey real estate which belongs to the estate under his control, by his own private sale, would seem to be too clear for controversy. (Todd *v.* Caldwell, 10 Tex., 241, 242.)

His only power to sell lands is conferred by statute; and it is not pretended, in this case, that the administrator made the sale under any provision of the statute, under a decree of court.

That an administrator has power to employ an attorney, when necessary to assist him in his administration, is not questioned; but in such case, under the direction of the court, he could only pay a moneyed fee. His power to employ an attorney does not authorize him to sell the lands of the estate.

If the sale was invalid as a private sale, does the subsequent decree of confirmation validate it? The decree of confirmation was not made in a suit in which the children of Mrs. Sevier were parties; it was not made in the ordinary course of administration, and in the exercise of the probate powers of the District Court; for we know of no cases in which the lands of an estate can be sold, except where it is necessary to pay debts, or for partition. It was a confirmation of a sale made without a decree authorizing the sale or fixing the terms thereof, and giving to all persons who desired to buy an opportunity to do so. It was not a conveyance made under decree of court to carry out an agreement to convey, made by Mrs. Sevier before her death; it was simply a decree confirming a conveyance made by the administrator to carry out an agreement which he had made, to give an attorney a certain tract of land for his services. Such a decree is at war with the whole theory of the law.

If Mrs. Sevier had any title to the land, it vested in her children, subject to the payment of debts; and unless it be done under the laws regulating the settlement of estates of deceased persons, we know of no power in any court, be its

jurisdiction general or limited by written law, by which one person may be divested of his property, and the title thereto vested in another, unless the court first acquires jurisdiction of the person whose rights are to be thus affected.

The jurisdiction of the District Court, in matters of probate, is conferred by the Constitution; but the Constitution provides that it shall be exercised under such rules and regulations as shall be prescribed by law. The Legislature has prescribed rules, and they are a limitation upon the powers of that court, and beyond them it cannot go, without usurpation.

When sitting in probate, its powers are defined by a written law, and it cannot exceed it; (3 Tex., 158; 28 Tex., 236;) and the fact that it has a general jurisdiction conferred upon it by the Constitution, in regard to matters which are to be tried under the rules and principles of the common law or equity, does not the less render it a court of limited jurisdiction in regard to matters of probate. (Jones v. Taylor, 7 Tex., 243; Francis v. Northcote, 6 Tex., 186; Baker v. Chisholm, 3 Tex., 158; Cowan v. Nixon, 28 Tex., 236; Todd v. Caldwell, 10 Tex., 242; The State v. Newhous, 41 Tex., 185.) Even if Sevier, the administrator, could have made the conveyance, as the appellee Terrell acquired his title by deed from A. B. Peticolas after the institution of this suit, he could not recover thereon. (May v. Slade, 24 Tex., 208.)

III. The plaintiffs set up a joint title in the land in controversy. The proof shows such title to the two central quarters only, and that as to the upper and lower quarters the title is in the plaintiff Terrell alone. Therefore this action cannot be sustained, at least as to so much of the cause of action as sets up the joint title to the upper and lower quarters of the land in controversy. (May v. Slade, 24 Tex., 208; Murray v. Webster, 5 N. H., 391.)

*A. B. Peticolas*, for appellees.— * * * The points upon which appellants rely to reverse this case, are, first, that there

was error committed by the court in admitting the deeds from Sevier's administrator to Peticolas, with the decree of confirmation, and the deed from Peticolas to Terrell for the upper quarter of the land in controversy.

Appellees do not perceive that this question can be raised by appellants at all. They have shown, by the testimony, that Mrs. Teal's house and improvements are on the two middle quarters, and not on the upper quarter. Appellants have failed to show that they will be the least disturbed in their possession by Terrell's possession of the upper quarter. Nevertheless, the point being raised, appellees meet it, by insisting—

1. That it is a collateral attack on a decree of a court of competent jurisdiction, which cannot be made in this suit by these parties, nor in this manner. (Jones *v.* Huff, 36 Tex., 683; Bohanan *v.* Hans, 26 Tex., 445; Box *v.* Lawrence, 14 Tex., 545; McCreery *v.* Fortson, 35 Tex., 647; Shannon *v.* Taylor, 16 Tex., 419; Mills *v.* Alexander, 21 Tex., 154; Kegans *v.* Allcorn, 9 Tex., 25.)

2. That the District Court, sitting as a court of probate, had full authority to make the order confirming the title made by the administrator of Louisa Sevier's estate to the attorney, and that the necessary process to give the court full jurisdiction in that suit had issued, and notice such as is required by law had been given, if the question of notice could be raised in this case by appellants, which is denied. The Probate law of 1870 (page 141) gives a general jurisdiction to the District Court in matters of estates. Further on, the court is empowered to order sale of real estate to pay debts, and to confirm sales. The court is also authorized to approve compromises of debts by the administrator, or to authorize compromises. And all these things are done upon posted notices to all persons interested in the estate. Nor does the law anywhere require citations to the heirs of an estate, before real estate can be, under the order of the court, applied to the payment of the debts of the estate.

Appellees maintain that the posted notices were sufficient to authorize the court to make the decree confirming the sale, especially as the decree itself shows that Sevier had express authority from the heirs to contract with an attorney for the services, and to pay him out of the land.

The District Court, sitting in probate, has a general equity jurisdiction, and is best able to determine what will be for the best interest of the estate, with all the facts before it; and such a decree will never be disturbed in favor of strangers to the estate, and in a collateral attack such as this is.

II. The second point upon which the appellants rely, is believed to be the doctrine of *res adjudicata* applied to the Sevier *v.* Teal case, and now urged as a bar to this action.

Appellees might confidently rest, as a reply to this point, upon the statute of trespass to try title, which provides for a second suit within one year. (Paschal's Dig., sec. 5299.) The Sevier *v.* Teal suit was decided by the Supreme Court in 1870; but the partition of the square league thereunder did not take place until 1872, and this suit was instituted during that year. Until that partition, and Anna Teal's refusal to move off the land of appellees, it was impossible for them to know that a second suit would become necessary. And it is submitted, that the statute on the subject of the second suit does not mean that the year is to run from the time of the decision in the Supreme Court, where further action is necessary in the District Court to make the decree of the Supreme Court effectual, but only after the final action in the first suit.

Again, plaintiffs in the Sevier *v.* Teal suit were minors when that suit was decided, and still are. There is a saving clause in the statute (Paschal's Dig., art. 3229) in favor of minors, &c.

Appellees being *pendente-lite* purchasers, their right to the second suit does not depend upon their own personal status, but upon that of the plaintiffs in the former suit. Those plain-

tiffs being still minors, are not barred from a second suit; so neither are the appellees.

*Glass & Callender*, also for appellees, after giving statement of case, (substantially incorporated above,) contended—

I. The main defense relied on, is that the plaintiffs are barred by the former judgment; that is, that that judgment, which is entirely silent as to the land sued for, does nevertheless necessarily imply an adjudication of the title against the plaintiffs, and in favor of the defendant. We say, in reply, that the title to this part of the "long league" was not in controversy in that suit, as the issue upon which the case was tried was made by the pleadings and the filed admissions of the parties, and that there was no adjudication upon that title, either express or implied.

It seems to us, that the recitals already made from the record show this, and that no argument can make it plainer.

The defendant admitted that Sideck had title to both leagues, and admitted that the plaintiff was Sideck's child and heir, but claimed that in 1832, when Sideck had only the square league, he had given half of that to Peter Teal; and while defendant claimed the half league donated to Teal, she admitted plaintiff's title to the other half, and prayed for partition. Thus the parties, by their pleadings and admissions, limited the issue to the validity and effect of that donation. On that issue they went to trial. That issue was decided in favor of defendant, but nothing else was decided in her favor, and nothing else could have been decided in her favor upon the issue in the case. If judgment had been rendered for her for that part of the long league which is now sued for, it would have been an erroneous judgment, because it would have been unwarranted by the issue upon which the parties went to trial; for the defendant, by her answer and admissions, had in effect admitted the title of the plaintiff to all the Sideck land outside of the square league, and the title to that outside part was, therefore, not in issue

in the cause. And now, when the judgment that was in fact rendered is silent as to that outside part, how can it be pretended that the silence implies a judgment which would not be valid if expressed ?

II. The estates of many decedents consist entirely of lands, and oftentimes of lands to which there are adverse claims. If the administrator cannot, with the approval of the court, contract with an attorney to give a part of the land as a fee for recovering or defending the whole, but must necessarily sell land while the title is unsettled, in order to be able to pay a money fee, it must lead to such a sacrifice of estates as the Legislature could not have contemplated when they framed our Probate laws. Besides, it appears, by the decree of the Probate Court confirming this deed, that the administrator, in making it, was acting not only under his general authority as administrator, but under a special authority from the heirs, who had a right to waive any irregularity which they might otherwise have complained of, and in this collateral proceeding the court cannot inquire into the validity of a deed made and approved under such circumstances. The presumption must be, that sufficient was shown to authorize the administrator to make, and to justify the Probate Court in approving and confirming, the conveyance.

MOORE, ASSOCIATE JUSTICE. — Unquestionably, the land which is the subject-matter of this suit is a part of the tract for which E. G. Sevier and wife, from whom appellees deraign their title, brought the suit upon which the appellants rely to maintain their defense of *res adjudicata.* But an inspection of the record of that suit shows, beyond question, that the claim of Sevier and wife to the land for which appellees sue was not adjudicated against them.

Although the defendants pleaded not guilty, yet, by their special pleas, they limited the issues to be adjudicated (Rivers *v.* Foote, 11 Tex., 662) to the right of Peter Teal to one-half of the land granted to John B. Sideck, September 18, 1830,

and October 28, 1834, by virtue of a donation executed to said Teal by said Sideck, December 15, 1832. By her answer, the defendant expressly admits that Mrs. Sevier, the plaintiff in that suit, was entitled to one-half of the land. And it was ruled by this court, on the first appeal of the case, (Teal *v.* Sevier, 26 Tex., 516,) that this donation relied upon by the defendant was inoperative, except as a gift of one-fifth of the property owned by the donor at its date. The court, as is manifest from its opinion, held that the defendant was not entitled to any part of the land involved in this suit, as it was not granted to Sideck until more than a year after the date of the donation to Teal. And it clearly appears, from the record, that the subsequent litigation in the case related exclusively to the land embraced in the grant of September 18, 1830.

We see no good reason why a judgment might not have been rendered in favor of the plaintiffs for the land sued for, not included within the limits of the league to which the defendants' claim under the donation to Teal, can be regarded as referring, subsequent to the decision of this court to which we have referred. But if this land was not expressly adjudged to the plaintiffs, there can be no pretense that judgment was, or could have been, rendered for it in favor of the defendants on the pleading and verdict. While it is not controverted, that, as a general principle, the judgment or decree of a court of competent jurisdiction is not only final as to the matters actually determined thereby, but also upon all matters properly involved in the issue passed upon and determined by the court; and that all matters put in litigation in a previous suit, and which could have been adjudicated therein, are concluded by it. (Foster *v.* Wells, 4 Tex., 101; La Guen *v.* Gouverneur, 1 Johns. Cas., 992.) But certainly it cannot be so held, where the record clearly shows that the matter in question was not in fact passed upon or adjudicated by the court; and this, too, when it could not, under the pleading and verdict, have been decided adversely to the

party against whom the judgment is claimed to operate as *res adjudicata.*

The objections to the deed from E. G. Sevier, as administrator of his deceased wife, Louisa Sevier, to Peticolas, should have been sustained. No authority was shown in the administrator to make this deed, or to bind the estate of his intestate to pay an attorney, for services rendered the estate, in lands. To concede to administrators such power, would virtually surrender to them the unrestricted management and disposal of the entire property of the estates they represent. The decree of the District Court gave to this deed no additional force. There was no case or parties before the court to authorize or warrant such a decree.

The deed from Peticolas to Terrell was made subsequent to the institution of the suit, and, if objected to on this ground, should have been excluded, (24 Tex., 208,) even if the deed from Sevier to him had been unobjectionable.

There is also, in my opinion, an error, not discussed by counsel or distinctly presented by the assignment of errors, but going to the foundation of the judgment, which would require its reversal, and to which, in remanding the case to the District Court, it is proper to call the attention of the parties. The plaintiffs, in their petition, claim to be joint owners of the land sued for; and they have, by the judgment, jointly recovered. But the evidence shows several titles for some of the tracts, making the aggregate described in the petition and judgment. The testimony relied upon by the plaintiffs does not, therefore, prove the title alleged in their petition, or support the judgment.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.