Rogers, Ward et al. v. Southern Pine Lumber Company et al.

Decided March 11, 1899.

1. **Receiver's Sale—Recitals—Conclusiveness.**

Where, at the instance of an unsecured creditor, a receivership was had for an insolvent corporation which had executed a trust deed to secure creditors, but the trust deed and its beneficiaries were not brought into the receivership proceedings, and a conveyance given by the receiver upon a sale of property by him recited that it was made subject to the trust deed, but no order was made making the trust deed a superior lien on the property, the purchaser was not precluded by such recital from attacking the validity of the trust deed.

2. **Pleading After Acquired Title—Res Adjudicata—Estoppel.**

A defendant is not required to plead a matter occurring pendente lite, such as a title acquired by himself after the commencement of the action, and is not estopped from asserting such title in any subsequent controversy, though it be with the party who prevailed against him in the former action.

3. **Trust Deed Preferring Creditors, by Insolvent Corporation, Void in Toto.**

A trust securing creditors, but with preferences, executed by an insolvent corporation, is invalid not only as to creditors, but as to all other persons against whom it is sought to be enforced.

4. **Receivership—Insufficient Grounds for.**

A receiver should not be appointed for an insolvent corporation at the instance of a mortgagee whose mortgage, aside from being void, is for an amount equal to only one-half the value of the corporate property, and such mortgagee is not entitled to the rents or revenues of the property.

Appeal from Marion. Tried below before Hon. Hiram Glass, Special Judge.

*F. H. Prendergast* and *Dickson & Moroney*, for appellants.

*Geo. J. Armistead, Smelser & Mahaffy*, and *Scott & Jones*, for appellees.

Finley, Chief Justice.—This suit was instituted by T. J. Rogers, receiver of the National Bank of Jefferson, W. B. Ward, and the Bank of Commerce of Kansas City, Missouri, against the Southern Pine Lum-

ber Company, H. P. Taylor, sheriff, and George J. Armistead, its main purpose being to enjoin the execution of an order of sale issued out of the District Court of Marion County upon a judgment therein rendered in favor of the said Southern Pine Lumber Company against the Jefferson Lumber Company and others, in which personal judgment for $4697.27 went against the Jefferson Lumber Company, and there was a foreclosure of a mortgage lien as to it and codefendants upon real and personal property. The trial below resulted in favor of the Southern Pine Lumber Company, and the plaintiffs have appealed. The facts and proceedings out of which the litigation arises are considerably complicated, and are in substance as follows:

1. The Jefferson Lumber Company, a private corporation organized under the laws of Texas for the manufacture and sale of lumber, running sawmills, and selling lumber at wholesale, becoming insolvent and unable to proceed with its business, and with no expectation of resuming business, undertook to dispose of all of its property by the following instruments:

July 1, 1891, bill of sale to the Jefferson National Bank, conveying $54,000 worth of lumber in payment of debts to the bank.

July 1, 1891, deed to Erastus Jones, conveying 14,732 acres of land in payment of debts to Jones.

July 3, 1891, deed to W. B. Ward, conveying 7652 acres of land in payment of debts to Ward.

July 7, 1891, two trust deeds to W. R. Camp, trustee, conveying 7000 acres of land, sawmills, railroads, etc., to secure in the order named preferred creditors of the Jefferson Lumber Company according to the following schedule:

(1)　Amounts due mechanics, laborers, artisans, and employes of the Jefferson Lumber Company, at their several mills situated at Atlanta, Kildare Mill No. 2, near Kildare; all in Cass County, Texas, in various amounts aggregating the sum of............ $5,367 70
(2)　National Bank of Jefferson, Texas, for............ 20,360 63
(3)　Linden Bank of Linden, Texas, for.............. 9,896 14
(4)　Atlanta Bank of Atlanta, Texas, for.............. 7,348 62
(5)　Erastus Jones, of Spencer, Mass., for............. 54,471 84
(6)　John M. Bemis, of Buffalo, N. Y., for............. 35,738 10
(7)　A. Weinstein, of Jefferson, Texas, for............. 6,169 88
(8)　J. B. Alexander, of Staten Island, N. Y., for....... 45,000 00
(9)　Southern Pine Lumber Company, of Texarkana, Texas ........................................ 12,674 10
(10)　Grigsby Bros., of Dallas, Texas................... 29,628 03
(11)　Citizens' Bank of Jefferson, Texas................ 9,486 07
(12)　Southern National Bank of New York City........ 6,000 00
(13)　Sulphur Lumber Company, of Sulphur Station, Texas 9,245 34
(14)　First National Bank of Milton, Pa............... 4,350 95
(15)　Marshall National Bank, Marshall, Texas......... 3,500 00

The grantees in the above instruments immediately took possession thereunder. They purported to convey all the property of the Jefferson Company, which was of the total value of from $150,000 to $200,000. The liabilities of the Jefferson Company exceeded $516,000.

It will thus be observed that there were $184,352.91 scheduled in the Camp trust deeds prior to the Southern Pine Lumber Company. While the record does not definitely show the value of the land deeded to Jones and Ward, yet, as all the assets did not exceed $200,000 in value, including the $54,000 worth of lumber conveyed to the Jefferson bank, it is plain that the debts scheduled in the Camp trust deeds prior to the Southern Pine Lumber Company greatly exceeded the value of the property embraced in the trust deeds, under the terms of which the Southern Pine Lumber Company would therefore receive nothing whatever.

2. On July 21, 1891, the Galveston National Bank, an unsecured creditor of the Jefferson Company, brought suit against it in the District Court of Marion County, alleging its insolvency, and praying for the appointment of a receiver. A receiver was appointed, who took charge of all the property embraced in the transfers to the Jefferson Bank, Jones, Ward, and Camp. The precise character of this suit is not clearly shown by the record, but the record shows that the Southern Pine Lumber Company was not a party, and that there was no pleading in the suit asserting the validity of the Camp trust deed or asking an adjudication upon it.

3. On Jaury 21, 1892, in this receivership suit, the court ordered all the property sold, the order providing as follows:

"And that the sale conveying the title and interest therein of the Jefferson Lumber Company as it stood on July 21, 1891, as to such as it then owned, and all the property as it now stands, and that said sale be made without prejudice to the rights of any person or persons, corporation or corporations, asserting any lien or title to said property or any of it.

"And whereas, at the date of the appointment of the receiver heretofore made, the National Bank of Jefferson was claiming the title and possession of 9,200,000 feet of lumber on the yards of said company, which lumber was upon the order of this court heretofore made delivered to the receiver by said bank.

"It is therefore ordered that the purchaser of said property at the sale here ordered shall take the lumber on hand at the date of sale subject to any claim the said bank may have, it being the intent and purpose of this court to put the lumber which may be on hand at the date of the sale in the place and stead of the lumber heretofore surrendered by said bank to said receiver; provided the same shall not be in excess of 9,200,000. This order shall in no manner impair the rights of the National Bank of Jefferson under the order heretofore made." .

On May 3, 1892, the property was sold to W. B. Ward, W. B. Chew, Elijah Robinson, and J. H. Bemis for $13,000.

On June 30, 1892, the court confirmed the sale. the order of confirmation providing as follows:

"And upon application of the Galveston National Bank, the said sale

is in all things confirmed and approved, and the said commissioners are hereby ordered to execute to said purchasers, deeds and other property so sold, subject to all legal claims embraced in the deeds of trust made by the Jefferson Lumber Company to W. R. Camp as trustee, dated July 7, 1891, which consists of all the real and personal and mixed property and choses in action, a description of which is recorded in Minute Book 'M,' pages 397 to 447, which is here referred to and made a part thereof, and the said receiver, H. O. O'Neal, is hereby directed to at once deliver to the purchaser the property so sold, and all the rights, titles, and interest of the Jefferson Lumber Company and the receiver thereof, in and to any and all of said property, is hereby vested in said purchasers, subject to the deed of trust heretofore made to W. R. Camp, as trustee, by the said Jefferson Lumber Company, on July 7, 1891. It is hereby decreed that the property above described be delivered to said purchasers, subject to any and all charges or liabilities of every character and kind incurred by the receiver in the management of the same, and said liabilities so incurred by said receiver are hereby declared to be a lien upon all of said property, and that the liens shall apply to liabilities incurred by the receiver in the management of said property."

And on July 8, 1882, the commissioner made a deed to the purchaser, reciting in the deed as follows: "It being understood that the above and foregoing property herein conveyed and transferred is sold under the order of the District Court of Marion County, Texas, subject to a deed of trust executed and delivered by J. H. Bemis, president of the Jefferson Lumber Company, to W. R. Camp, trustee, July 7, 1892, and duly recorded in county clerk's office, Cass County, Texas, in Book 'D' of mortgages, pages 199 to 215, inclusive."

4. In this purchase Elijah Robinson represented the National Bank of Commerce of Kansas City (hereinafter called the Kansas City Bank), a creditor of the Jefferson Lumber Company. On May 3, 1892, the day the property was sold, and in anticipation of a confirmation of the sale, the purchasers entered into an agreement contemplating the conveyance of the property to a new corporation to be organized as soon as the sale was confirmed. This agreement provided that the corporation to be organized should have a capital stock equal to the amount of $185,000 of the "preferred claims" against the Jefferson Lumber Company, and 60 per cent of the claims of the Kansas City Bank against the Jefferson Lumber Company and J. H. Bemis & Co., and 60 per cent of the claims of the National Bank of Jefferson against the Jefferson Lumber Company, and interest on all said claim from maturity. The remaining 40 per cent of said bank's claim was to be settled by notes of the new corporation, secured by trust deed on the property. The $13,000 paid at the receiver's sale by the four purchasers was provided for as follows: The new company was to pay Chew his one-fourth in cash, and to give its notes to each of the other three purchasers for their respective proportion (one-fourth), also secured by trust deed on the property, all the notes provided for in the agreement to be on a parity.

The agreement recited that Erastus Jones, J. M. Bemis, J. B. Alexander, Grigsby Bros., Sulphur Lumber Company, Southern National Bank of New York, and W. B. Ward, creditors embraced in the trust deeds, proposed to convey their respective interests to the new corporation. If they failed to do so, the agreement was to be of no further force and effect. By reference to the schedule in the Camp trust deeds it will be seen that this reorganization embraced $155,570.57 of the claim prior to the Southern Pine Lumber Company, largely more than the property embraced in the Camp trust deeds, and $34,873.38 of claims subsequent to the Southern Pine Lumber Company, in all $200,443.95.

The agreement made no provision concerning the claims of creditors who had not agreed to go into the reorganization. J. H. Bemis, assuming to represent the Southern Pine Lumber Company, also went into the reorganization, and stock was issued for its claim; but the jury found that this was unauthorized.

5. The Kildare Lumber Company was incorporated in accordance with the foregoing reorganization agreement, and, on July 13, 1892, all the property purchased at the sale in the Galveston Bank receivership case was conveyed to the Kildare Lumber Company, which thereupon executed to L. S. Schluter, trustee, a deed of trust on all the property to secure the notes provided for in the reorganization agreement.

6. On August 28, 1893, said Kansas City Bank, complainant, brought suit in the United States Circuit Court for the Eastern District of Texas, against the Kildare Lumber Company, J. H. Bemis, its manager, W. R. Camp, trustee in the trust deed of the Jefferson Lumber Company, L. S. Schluter, trustee in the trust deed of the Kildare Lumber Company, W. B. Ward, a creditor in the Schluter trust deed, the Atlanta Bank and Citizens Bank, creditors in the Camp trust deed, defendants, the purpose of the suit being to foreclose the Schluter trust deed.

Camp disclaimed and the suit was dismissed as to him.

T. J. Rogers answered as assignee of the Citizens National Bank, and by cross-bill sought a foreclosure of the Camp trust deed.

On October 3, 1894, a decree was passed foreclosing the Camp trust deed in favor of Rogers, assignee of the Citizens Bank, for $9486, and foreclosing the Schluter trust deed in favor of the Kansas City Bank for $32,267, and W. B. Ward for $5099, these being the amounts respectively due. The decree gave Rogers, assignee, a priority over the Kansas City Bank and Ward.

The suit was dismissed as to the other defendants. The Southern Pine Lumber Company was not a party to this suit.

On September 3, 1895, the property was sold under this decree to W. B. Ward and S. J. Fitzhugh for $45,000, Fitzhugh buying 73⅔ per cent for the Kansas City Bank, and Ward buying 11⅓ per cent for himself and 15 per cent for the Jefferson National Bank.

The sale was confirmed in January, 1896, and deed duly executed.

Rogers, assignee, was paid in full, and after payment of court costs, the

balance of the bid was credited on the judgments in favor of the Kansas
City Bank and Ward.

Subsequently Rogers was appointed receiver of the Jefferson National
Bank, and, as such receiver, now owns the 15 per cent purchased by said
bank in the name of Ward.

7.   On August 10, 1895, subsequent to the decree and before the sale
in the Kansas City Bank case in the Federal court, the Southern Pine
Lumber Company filed suit in the District Court of Marion County on
two drafts, its alleged debts scheduled in the Camp trust deed, seeking a
foreclosure of said trust deed.   The defendants were the Jefferson Lum-
ber Company, Kildare Lumber Company, W. B. Ward, Atlanta Bank,
T. J. Rogers, assignee of the Citizens Bank, and W. R. Camp.   One draft,
for $1834.84, matured July 23, 1891.   The other, for $1575.90, matured
August 12, 1891.   Citation was issued August 12, 1895, and served a
few days later.   There was a judgment by default for $4637.27 against
all the defendants on June 12, 1896, with foreclosure as prayed for.

On February —, 1897, an order of sale was issued and the property
was advertised for sale.

8.   March 1, 1897, the National Bank of Commerce of Kansas City,
T. J. Rogers, receiver of the National Bank of Jefferson, and W. B.
Ward, claiming title under the Federal court foreclosure, brought this
suit against the Southern Pine Lumber Company, George F. Armistead,
its attorney, and H. P. Traylor, sheriff, to enjoin the sale under the
Southern Pine Lumber Company foreclosure.

The temporary writ of injunction was granted, and subsequently it
was, on motion of defendants, in part dissolved, conditioned upon defend-
ants giving a refunding bond, which was not complied with by defendants.
Subsequent to this the court appointed a receiver to take charge of the
property at the instance of the defendants on ex parte application.   Mo-
tions to discharge the receiver were made by the plaintiffs and refused by
the court.   On the trial below the court submitted the case on special
issues and the jury found:   (1)   That the Jefferson Lumber Company
received the consideration for the two drafts on which judgment was ob-
tained on June 12, 1896.   (2)   That the Southern Pine Lumber Com-
pany accepted the trust deed to Camp on the next day after it received in-
formation of the same to J. H. Bemis.   (3)   That J. H. Bemis had no
authority to release the Southern Pine Lumber Company's claim against
Jefferson Lumber Company.   (4)   T. L. L. Temple, for the Southern
Pine Lumber Company, did not settle with Bemis for the drafts for
$1575.90.   (5)   The Jefferson Lumber Company has not settled said
drafts.   (6)   The Jefferson Lumber Company was not insolvent on the
7th of July, 1891, when it made the Camp trust deed, and was then able
to continue its business, and the Camp trust deed was not made in con-
templation of ceasing to do the business of operating its mills.   (7)   The
Jefferson Lumber Company did not cease to do business after it executed
the Camp trust deed, and it had intended to resume its business and re-
deem the property.   The plaintiff made a motion for a new trial, on

which the court made the following order: "This day came on to be heard the plaintiff's motion for a new trial in the above cause. The court overrules said motion for a new trial, but does so upon the following grounds: The court finds that all of the findings of the jury in answer to the seventh, eighth, and ninth questions propounded to them in the charge are each contrary and against the evidence. The court finds the facts to be: (1) That the Jefferson Lumber Company was insolvent when it made the trust deed to Camp on July 7, 1891. (2) That it was not then able to continue longer in business. (3) That the Camp trust deed was made in contemplation of ceasing to do business. (4) That the Jefferson Company conveyed all of its property between July 1 and 8, 1891. (5) That when it made the Camp trust deed it had no intention of redeeming the property and resuming the business. The court holds that the findings of the jury in answer to questions 7, 8, and 9, as above shown, are immaterial, and he sets aside their findings to those questions and gives judgment, notwithstanding, for the defendant Southern Pine Lumber Company, for foreclosure of the deeds of trust to W. R. Camp, trustee, for the amount due on the judgment in cause No. 6365, covering the amount of the two acceptances, one for $1834.94, dated April 25, 1891, due in ninety days, and one for $1575.90, dated May 14, 1891, due in ninety days, because the court finds, by reason of the recital in the order to sell the property made by the District Court of Marion County, made in January, 1892, in the case of the Galveston National Bank v. Jefferson Lumber Company, and in the recital made in the order confirming the sale made in June, 1892, bound the property in same to pay the debts set out in the Camp trust deed. I further find that the $1834.94 note was not as to the parties to this suit barred on August 10, 1895, the day the Southern Pine Lumber Company filed suit on it, because plaintiff can not invoke the statute of limitation on account of the recitals in the decree confirming the sale aforesaid. I find that the judgment of June 12, 1896, was and is binding on W. B. Ward as to all the title he then held, which I find to be eleven and one-third per cent of the property in the Camp trust deed. I approve the verdict except as to the matters mentioned above, to wit, the seventh, eighth, and ninth findings; the plaintiff's motion for judgment is overruled. Plaintiff excepts to above ruling as far as against them, and gives notice of appeal; ten days allowed to parties after court adjourns to prepare and file statement of facts."

*Opinion.*—The first inquiry which would logically arise, and which is presented by assignments of error, is the correctness of the holding by the trial court that the order of sale issued upon the decree in the case of Galveston National Bank v. Jefferson Lumber Company, and the order confirming the sale made thereunder bound the property to pay the debts set out in the Camp deed of trust. The proposition is, that appellants' title comes through the sale made under and by virtue of the order of court issued in the receivership case of the Galveston National Bank v.

Jefferson Lumber Company, and that the terms of that order of sale and of the order of confirmation fixed upon the property sold liability for the debts sought to be secured by the Camp deed of trust, and that appellants are estopped to deny such liability, and can not for this reason assert their title in hostility to the debt and lien of the appellee arising under the Camp deed of trust.

It may be readily admitted that the District Court, in which the receivership pended had the power, assuming that all the essential conditions to the exercise of such power existed, to fix upon the property in question primary liability to the debts sought to be secured in the Camp deed of trust, and to order the property sold subject to this liability. Do the orders of sale and confirmation manifest it to have been the purpose of the court to recognize the Camp deed of trust as a primary lien on the property and to make the title of the purchaser at the judicial sale subordinate to the liens sought to be created by such deed of trust? In other words, did such orders have the effect to bind the property to pay the debt set out in the Camp deed of trust, so as to preclude the right of the purchaser under the judicial sale to defend against foreclosure of the Camp deed of trust and sale of the property thereunder? These orders were made in a case wherein the Galveston National Bank was the plaintiff and the Jefferson Lumber Company was the defendant. There was no party to this suit to represent the interests involved in the Camp deed of trust, and no issue in relation thereto was raised by the pleadings. The trustee and beneficiaries were strangers to this proceeding, except in the general sense in which all creditors may be required to take notice of proceedings in receiverships. Had the orders of sale and confirmation, under these conditions, contained no recitals as to the Camp deed of trust, it seems clear that the rights of the beneficiaries in such deed of trust would not have been affected by such sale. It is equally clear that the purchaser under such conditions would not be precluded from asserting his title thus acquired in hostility to the claims of the beneficiaries in the Camp deed of trust. The order of sale directed that the sale should "be made without prejudice to the rights of any person or persons asserting any lien or title to said property." This provision in the order seems plain and clear. Here was a receivership in which an unsecured creditor and the debtor were the only parties to the record, and in granting the order to sell the property the court simply provided that the claims of others asserting title to or lien upon the property should not be cut off or concluded by such sale. As before indicated, the order would have had the effect here provided for without such express limitation, considered in relation to title or lien held by strangers to the record.

The order of confirmation is fuller in its recitals as to this matter. It recites that the deeds to the purchasers shall be made "subject to all legal claims embraced in the deeds of trust made by the Jefferson Lumber Company to W. R. Camp." And further, "that the title and interest of the Jefferson Lumber Company, and the receiver thereof, is vested in said purchasers subject to the deed of trust heretofore made to W. R. Camp."

The deed executed to the purchasers recited that the sale was subject to said deed of trust. These recitals must be considered in connection with each other and in the light of the record of the case in which the orders were made. There is no express language in these orders fixing the Camp deed of trust as a lien upon the property superior to the title of the purchaser at the judicial sale. And it is hardly reasonable to assume that the court intended so to determine, in the absence of parties and pleadings asking the protection of the rights of the beneficiaries in the deed of trust. At the time these orders were entered (1892) the law as to the right of an insolvent corporation to make a deed of trust preferring creditors was not considered settled in this State, and it is not at all unlikely that this fact influenced the court to exclude from its decision and judgment all such issues. Lyons-Thomas Case, 86 Texas, 189. In our judgment the only reasonable conclusion to be reached is that the court intended that issues of title or lien not made in that case were not to be deemed determined therein, and the recitals in the order were inserted for the purpose of manifesting the exclusion of all such claims from consideration and determination. In so far as this sale is concerned, it left the beneficiaries in the Camp deed of trust unaffected. Their rights were neither established nor divested by such orders, but stood as though the orders had not been made. Teal v. Terrell, 48 Texas, 508; Water Co. v. De Kay, 36 N. J. Eq., 548; Groesbeck v. Golden, 7 S. W. Rep., 362. This holding is not believed to be in conflict with the decision of this court in Park v. Prendergast, 4 Texas Civil Appeals, 566, to the effect that "a junior mortgagee, whose mortgage is expressly made subject to a prior mortgage, can not defeat the prior mortgage lien by showing that it is invalid against the mortgagor." That proposition resulted from a construction of the contract of the parties. The grantor had the right to convey the property burdened with a prior mortgage, and the grantee taking it under covenants of title imposing such burden should not be heard to assert the superiority of his title over it.

2.  The next question which we will consider is to what extent appellant's are concluded by the judgment of foreclosure rendered in favor of appellee. As has been stated, the Southern Pine Lumber Company was plaintiff in that suit; the defendants were Jefferson Lumber Company, debtor; Kildare Lumber Company, W. B. Ward, Atlanta Bank, T. J. Rogers, as assignee of the Citizens National Bank, and W. R. Camp, and it was alleged that they claimed some interest in the property. The National Bank of Jefferson and the Bank of Commerce of Kansas City were neither of them parties to that suit. Ward is the only one of the appellants who was made a party to that suit. His interest in the property, as considered in reference to the interest of his codefendants, is 11⅓ per cent. Of course the interests of the two appellants who were not made parties are not concluded by the judgment; the question is whether Ward's claim of title is concluded by the judgment. As indicated by the statement previously made, the suit was to foreclose the deed of trust executed by Jefferson Lumber Company for benefit of certain of its creditors,

in favor of the Southern Pine Lumber Company, who was a preferred creditor therein. The suit was filed August 10, 1895, and Ward and the other defendants were soon after served with citation, and judgment by default went against them and a decree of foreclosure was entered June 12, 1896. Ward and the others had purchased the property at the receiver's sale in the State court in the suit of the Galveston National Bank v. Jefferson Lumber Company, and his purchase was confirmed June 30, 1892. On July 13, 1892, the purchasers organized the Kildare Lumber Company, and the Kildare Lumber Company, in July, 1892, executed the trust deed to L. S. Schluter to secure W. B. Ward in some $5000, and to secure the National Bank of Commerce for some $30,000. On August 28, 1893, the National Bank of Commerce filed suit in the United States District Court for the Eastern District of Texas, at Jefferson, to foreclose the Schluter trust deed on the property, and W. B. Ward, who was also secured in the Schluter trust deed, was made a defendant in that suit, and the Citizens Bank, which was secured in the Camp trust deed made by the Jefferson Lumber Company, July 7, 1891, was also made a defendant, and T. J. Rogers, as assignee of the Citizens' Bank, filed a cross-bill and asked a foreclosure of the Camp trust deed to secure the amount due the Citizens Bank. On October 3, 1894, there was a decree in the Federal court in favor of Rogers, assignee of the Citizens Bank, to foreclose the Camp trust deed, and in favor of the National Bank of Commerce for $33,267 in favor of W. B. Ward on his cross-bill for $5099, and a foreclosure of the Schluter trust deed, this being the amount due on the Schluter trust deed, and the decree gave Rogers a preference. The property was sold under this decree on September 3, 1895, to W. B. Ward and S. J. Fitzhugh for $45,000. They paid off the judgment in favor of Rogers, assignee of the Citizens Bank, for $13,000 and about $2000 costs, and credited the remainder of the $45,000 on their debts. So at the time Ward was sued by the Southern Pine Lumber Company he had no title to the property, but had a debt of $5099 secured by the Schluter trust deed, which had been regularly foreclosed in the Federal court, and the sale under that foreclosure had not been made. That the sale was made on the 3d of September after the suit was filed, and the sale was confirmed in January, 1896. At the time the judgment was rendered on June 12, 1896, Ward had a title to 11⅓ per cent of the property. The court held that all the title Ward had on June 12, 1896, the date of the judgment, was barred by that judgment.

It is held that a plaintiff can not recover on an after acquired title, unless it be specially pleaded. Ballard v. Carmichael, 83 Texas, 365. Our courts have further held that a title acquired by plaintiff during the pendency of his suit and not pleaded by him is not concluded by the judgment, and he may bring a new suit on this title. Connoly v. Hammond, 58 Texas, 21; Freem. on Judg., sec. 249. In section 329 of Freeman on Judgments, the author discusses the question here under consideration as follows: "The question has not yet been sufficiently discussed to enable one to foresee upon which side the weight of authorities will be

finally ranged, as to whether a title may be regarded as an after-acquired one, when its acquisition, though after the commencement of the action, was prior to the rendition of the judgment therein. It is well settled that the issues in a case ordinarily refer to the beginning of the suit, and that matters occurring during its pendency are not in issue, and can not be received in evidence, unless under some supplemental pleading filed by permission of the court. So far as the plaintiff is concerned, no doubt he is not estopped from asserting any title acquired after the commencement of the action, because he must generally recover upon the cause of action held by him at that time, and can not be aided by rights of action arising afterwards. A defendant will, however, ordinarily be permitted by the court to plead that he has acquired a defense, or that plaintiff's cause of action has terminated pendente lite; and acting upon the rule that whatever may be presented as a defense to an action must be so presented, some of the courts have held that a title acquired by a defendant after the commencement of an action must be asserted by supplemental pleading therein, and not being so asserted, is forever lost to him. But, in our judgment, the defendant is under no obligation to enlarge the issues presented by the plaintiff's complaint, or in other words to tender an issue respecting a matter which he claims to have occurred pendente lite, and if he does not plead title acquired after the commencement of the action, is not estopped from asserting it in any subsequent controversy, though it is with the party who prevailed in the former action."

The case of Reed v. Douglas, 74 Iowa, 244, holds contrary to the view taken by Mr. Freeman, and is the case alluded to in the above quotation. This case is reported in 7 American State Reports, 476, and is there criticised by Mr. Freeman as not well considered and contrary to the weight of authority and sound principle. In harmony with Mr. Freeman are McLane v. Bovee, 35 Wisconsin, 35; People's Savings Bank v. Hodgdon, 64 California, 95.

We are of the opinion that the view of the question taken by Mr. Freeman is sound, and should be held to be the law in this State. It is contended by appellee that while this may be the correct rule when applied to a title acquired by defendant after answer has been filed and prior to judgment, it should not be held to apply to a case where no answer at all is filed and judgment is permitted to go by default against him. The cases above referred to do not discuss this distinction and can not be relied upon as deciding this particular contention. Mr. Freeman, in criticising the Iowa case, says: "The utmost that a judgment can be properly regarded as determining is, that the facts alleged in the complaint were true when it was filed." We see no good reason for exempting defendant from setting up a title acquired after answer filed and before judgment, while holding that a title acquired after citation and before judgment is concluded by a default judgment. There is no well defined principle upon which such a distinction may be safely based. This leads to the conclusion that Ward's claim to the property arising under the foreclosure sale of the Federal court was not res adjudicata.

3. Appellants attack the Camp deed of trust as illegal and void, because made by an insolvent corporation, unable to continue longer its business, and the trust deed preferred some creditors over others.

In Lyons-Thomas Case, 86 Texas, 189, it is held that when a corporation becomes insolvent and ceases to be a going concern, its assets become a trust fund in the hands of the directors for the benefit of creditors, and the corporation can not prefer certain creditors over others by conveying such assets to a trustee for the benefit of the preferred creditors. In the later case of Fowler v. Bell, 37 Southwestern Reoprter, 1058, the doctrine is reannounced and such a conveyance is held to be void. Appellee contends that such issue can only be raised by a creditor of the corporation, and that appellees do not occupy such position in this suit. Appellants were in possession of the property under claims of ownership, when it was taken from their possession and placed in the hands of a receiver at the instance of appellee. Appellee has no right to take the property from them and have it sold under foreclosure of a mortgage lien, unless it be upon a valid and subsisting mortgage. If it be void, then appellants have such interest in the property as would authorize them to resist the foreclosure sale upon that ground. Whatever defects there may be in their claim of title, their possession under claim of ownership should be held sufficient to justify their resistance to any illegal claim asserted against the property. In the case of Fowler v. Bell, above referred to, it was held that such a mortgagee could not foreclose against one who had purchased the property from one who was a creditor and who attached for his debt and bought in the property at the attachment foreclosure sale. In that case Mr. Justice Brown says: "The only question we find it necessary to consider is, was the mortgage given by the McLeod Artesian Well Company in favor of Mrs. Bell valid? If it was not, she can not maintain this suit to foreclose it, whether the defendant acquired title or not under the judgment foreclosing the attachment lien." The effect of the decision is, that such a mortgage is not merely invalid as to creditors, but it is void as to all other persons against whom it is sought to be enforced.

Again, it is urged by appellee that should appellants prevent it from realizing its debt out of this property, all the creditors of the insolvent corporation will be cut out and the property appropriated by others not entitled to it. This contention is not true in fact. The claim of title asserted by appellants ultimately runs back to and through proceedings had to enforce the claims of creditors of the insolvent corporation.

Were it otherwise, however, the appellants being in lawful possession of the property under claim of ownership, they would have the right to enjoin its seizure and sale under a decree foreclosing a void mortgage, by which they were not bound as parties. In the Bell case above cited the court says: "The fact that the plaintiff in the attachment suit proceeded contrary to law, and appropriated to his exclusive use a part of the trust fund, will not justify the court in taking from the purchaser that which was lawfully appropriated, with no greater legal right than that of

turning the property over to the defendants in error to be by them applied to their exclusive benefit."

The points already discussed were the controlling issues with the trial court, and we do not feel called upon to discuss the other contentions upon which the court did not act. We think it necessary to pass upon the question whether there was error in the appointment of a receiver and the refusal to discharge him on motion made for that purpose.

The receiver was appointed upon the answer and cross-bill filed by appellee in this suit, presented ex parte to the judge in chambers. It was made apparent by the pleadings then filed, the character of the mortgage which had been foreclosed and under which the property was levied upon and advertised for sale at the instance of appellee. Under our view of the case, the mortgage being void and the appellants having the right to resist its enforcement against the property held by them, the receiver should not have been appointed. Even aside from this proposition we think the record shows that the appointment of a receiver was wholly unnecessary. The debt of appellee was about $6000; the property is shown to have been worth double that sum; appellee was not entitled to receive any revenue from it, and its alienation or other disposition could have been effectually prevented if feared, by a restraining order of the court. As stated, the appointment was made upon ex parte hearing and the facts were not fully presented to the court. This is too often the case on such hearings, and this extraordinary power ought not to be exercised upon ex parte hearings except in cases of great emergency. Smith on Receivership, sec. 374; Beach on Receivers, sec. 134.

The appointment was made February 9, 1898, and on the 7th of March following the court heard a motion to discharge the receiver and denied the motion. Again, on June 28, 1898, motion to discharge was heard and denied. On these hearings the case was more fully developed, and showed a state of facts which should have secured an order discharging the receiver.

As heretofore stated, the debt of appellee was $6000, and the value of the property $12,000. It did not appear that there was any revenue being derived therefrom which it was necessary to protect, and so far as the matter of disposing of the property is concerned, a restraining order would have served the purpose. Jones v. Smith, 40 Fed. Rep., 314.

In Beach on Receivers, section 520, it is stated: "As has already been said, the principal ground for the appointment of a receiver is the inadequacy of the security. This inadequacy must be either, first, the insufficiency of the mortgaged premises as a security for the mortgage debt, or second, the irresponsibility or inability of the mortgagor to pay any deficiency." "Proof must also be given of the insufficiency of the security, and this insufficiency must relate to the value of the property as compared with the principal debt on which the application is made, without reference to subsequent mortgages." And in Beach, section 529, it is stated: "To entitle him to this species of ejectment it must be shown that the mortgaged premises are inadequate security for the debt, and that the

mortgagor or other person liable for the mortgage debts is insolvent." In the case of Whitehead v. Wooten, 43 Mississippi, 523, the court refused to appoint a receiver upon the ground that unless the mortgagee has contracted that the plaintiff shall have the rents and income after default made, he is not entitled to them, or to a receiver to get them in, except in case of the insufficiency of the property to meet the debt. In Beach, section 510, it is stated "that the principal duty of a receiver of real property is to look after the rents of the estate. He is virtually made landlord, and has the rights òf a landlord as against the tenants." See Beach on Receivers, secs. 72, 73, 74.

In this State a mortgagee is not entitled to possession nor to rents of the property. Rev. Stats., art. 4882.

The judgment of the court will be reversed and cause remanded for another trial. The order appointing a receiver is hereby vacated, the receiver discharged, and the property ordered to be restored to the proper custody. The court below will make all necessary orders closing up the administration and adjudging the costs incurred therein.

*Reversed and remanded.*
*Receiver discharged.*