(69 Misc. Rep. 476.)

## LEHMEYER v. MOSES.

(City Court of New York, Trial Term. November, 1910.)

1. LANDLORD AND TENANT (§ 160*)—REPAIRS—BREACH OF COVENANT—MEASURE OF DAMAGES.

Where a tenant violates his covenant to surrender the premises in as good condition as reasonable use and wear will permit, damages by the elements excepted, by failing to keep and leave them in good repair, having due regard to the age and class of building, the measure of damages is the necessary cost of making the repairs, and not the difference in the fee value of the building.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 160.*]

2. LANDLORD AND TENANT (§ 160*)—REPAIRS—COVENANTS—CONSTRUCTION.

A tenant's covenant to surrender the premises in as good condition as reasonable wear and use will permit, damages by the elements excepted, calls for ordinary, not extraordinary, repairs, and is limited to repairs as such, and not to work of restoration or renewal, where the decay is so extensive as to render repairs in the ordinary sense impossible, and where the building is destroyed by a fire or the elements, so that it could not be repaired, the tenant is not obligated to rebuild.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 612–626; Dec. Dig. § 160.*]

3. LANDLORD AND TENANT (§ 152*)—REPAIRS—COVENANTS—CONSTRUCTION.

Covenants in a lease that the tenant agrees to keep the premises insured for his own benefit, and will have no claim and demand on the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

landlord for damage on the building in case of fire, and that, in case of destruction of the building by fire or otherwise, the tenant may rebuild the same, construed in connection with a subsequent agreement reciting that the property was already insured for the lessee's benefit, and providing that he should continue to insure it, and that, if the landlord received the insurance and failed to pay it to the tenant, the latter might retain the rent till it equaled the amount of the insurance, required the tenant to rebuild in case of destruction of the building by fire.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. §. 152.*]

4. CONTRACTS (§ 143*)—VALIDITY.

Parties have a right to make agreements to suit themselves, and, in the absence of fraud and mistake, it is the duty of the court to enforce them as made, though a hardship may be worked.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 723; Dec. Dig. § 143.*]

5. LANDLORD AND TENANT (§ 152*)—PREMISES—COVENANTS—DESTRUCTION OF BUILDING BY FIRE.

Where the lessee of a frame building covenanted to rebuild it in case of its destruction by fire, and at the time of such destruction Building Code, §§ 143, 145, prohibited the building of any frame or wood structure in the city of New York within the fire limits, within which the building in question was located, the lessee is not obligated to erect a brick building at a sum far in excess of what it would cost for the construction of a frame building.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 152.*]

6. LANDLORD AND TENANT (§ 55*)—PREMISES—"WASTE."

"Waste" consists of some definite physical injury to the premises leased.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 136–150; Dec. Dig. § 55.*

For other definitions, see Words and Phrases, vol. 8, pp. 7406–7408; vol. 8, p. 7833.]

7. LANDLORD AND TENANT (§ 55*)—PREMISES—COVENANTS — RESTORING DESTROYED BUILDING—WASTE.

Where the lessee of a three-story frame building on the front part of a lot with a one-story addition in the rear covenants to rebuild in case of destruction of the building by fire, but, on such destruction, the Building Code preventing the reconstruction of a frame building, he erects a brick building on the front portion of the lot, where the court makes an allowance for his failure to build the one-story building in the rear, and there is no evidence of prejudice to the lessor from the erection of a different building on the front portion of the lot except his statement that he had been informed by an architect that it would take from seven to ten days to restore the building to its former state, the lessor will not be permitted to recover as for waste for the erection of a building on the front portion of the lot different from that which had stood there.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 55.*]

8. JUDGMENT (§ 715*)—CONCLUSIVENESS—MATTERS CONCLUSIVE—IDENTITY OF ISSUES.

A judgment for a lessor in an action for rent which was defended on the ground of the destruction of the building by fire is not res judicata in a subsequent action by the lessor for breach of covenants by the lessee to rebuild in case of destruction of the building by fire and for waste in the erection of a different building on a part of the premises; the issues not being the same.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1244–1247; Dec. Dig. § 715.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Action by Louis T. Lehmeyer against Moses R. Moses. Judgment for plaintiff.

See, also, 174 N. Y. 518, 66 N. E. 1111.

Norwood & Marden, for plaintiff.
Blandy, Mooney & Shipman, for defendant.

FINELITE, J. Action tried before the court without a jury. The plaintiff seeks to recover damages under certain covenants of a lease for the failure of the defendant to restore and rebuild another building on the rear of the demised premises, which was destroyed by fire. The lease in question was executed on the 1st day of May, 1887, between this defendant and the plaintiff's assignor, covering premises No. 206 East 120th street, in the borough of Manhattan, city of New York, with the appurtenances, for the term of three years at the annual rent in said lease mentioned. Said lease contained two renewals, the first for 20 years from May 1, 1890, and the second for 20 years from May 1, 1910, respectively, which renewals were subject to the covenants and conditions as contained in the lease for the first demised term, excepting and subject to an increased rental. Said defendant entered into possession of said premises on the 1st day of May, 1887. The plaintiff became the owner of said premises thereafter, and the lease was assigned to him on the 30th day of June, 1896, when said defendant attorned to the plaintiff under said lease and paid the rent to him therefor. When said defendant entered into possession of said premises, there was erected a three-story frame building about 25 feet in width in front and rear on the first floor thereof, 29 feet in depth on each side on the first floor thereof, and attached thereto immediately in the rear an extension of about 25 feet in width in front and rear by about 71 feet in depth on each side, a frame structure about one story in height, all of which premises were used for said defendant's business. About the 18th or 19th days of March, 1901, a fire occurred, destroying said premises, and by an order issued by the building department of the city of New York said defendant was directed by said department to take down remaining part of said building as unsafe, which he did.

The plaintiff seeks to recover damages, first, for the failure of said defendant to rebuild after the fire a portion of the building destroyed under the express agreement to rebuild in case of fire; second, for waste in putting up a different structure on the front of said lot from the one leased. It is necessary to refer to the covenants of said lease which are made applicable to the important issues involved herein, and which covenants read as follows:

"That at the expiration of the said term the said party of the second part will quit and surrender the premises hereby demised in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted. * * * The said party of the second part agrees to keep said premises insured for his own and sole benefit and will have no claim and demand on the party of the first part for any damage or loss on building in case of fire. And the party of the second part agrees to do all repairs on said premises, if any, or, if desired by him, at his own cost and expense, without any claim on the party of the first part. In case of the destruction of said building by fire or otherwise the party of the second part may rebuild the same and erect another building. * * *"

Annexed to said lease is an agreement which was entered into between the plaintiff's assignor and this defendant on July 1, 1887, which recites the lease, the houses erected on the premises, the amount of the insurance covering said premises, the amount of premium for said insurance, and in case of the destruction of the premises by fire the loss thereof to be payable to defendant under the conditions in said agreement expressed, which agreement is more fully set out and referred to in the opinion hereinafter recited. When said building was destroyed by fire, as heretofore stated, said defendant, on the 30th day of March, 1901, immediately gave notice to the plaintiff that, in consequence of the building having been so injured by fire as to be untenantable and unfit for occupancy, the defendant surrendered the leasehold premises, and that the lease was at an end under the provisions of section 227 of the real property law (Consol. Laws, c. 50). Thereupon an action was brought by the plaintiff against said defendant in the Supreme Court, First Department, to recover the rent due on April 1, 1901, in which action said plaintiff was successful and obtained a judgment, which was affirmed (67 App. Div. 531, 73 N. Y. Supp. 1016). On the affirmance of said judgment on appeal, Ingraham, J. (writing the opinion for the court), in part says:

"On March 18 or 19, 1901, there was a fire upon the premises which seriously injured the building so that it was ordered to be taken down by the building department, and subsequently, on the 30th day of March, the defendant notified the plaintiff that in consequence of the building having been so injured by fire as to be untenantable and unfit for occupancy the defendant surrendered the leasehold and premises. There was also an agreement between the parties to the lease, dated July 1, 1887, which recited the lease and that the house erected on the premises 'has been and is now insured in the sum of $5,000, and the loss in case of fire is made payable to the mortgagee,' that by the lease the defendant had agreed to keep the premises insured and had paid to the plaintiff thirty dollars, being the proportionate part of the premium due under the policy of insurance, and provided that, in the event of the said premises being damaged by fire or wholly destroyed thereby, the lessor would pay to the lessee the amount which the insurance company should pay under said policy to repair the damage done or rebuild in case the premises were wholly destroyed, and that, in the event that the lessor should neglect or refuse to pay to the lessee the amount so paid by the insurance company, then the lessee should retain the rent thereafter to become due until the amount thereof should equal the payment made for the loss by the insurance company under the said policy before referred to. It is quite apparent from the lease and agreement that the parties had in mind the possibility of the destruction of the building, and provision was made for the happening of the contingency. The building (not the lessee's interest) was to be insured, and the amount paid by the insurance company was to be paid to the lessee. He was to make all the repairs to the building, and, in case it was destroyed by fire, was to rebuild. This is entirely inconsistent with his right to terminate the lease upon the building being destroyed by fire, and this conclusion is much strengthened when we consider the terms of the lease and the character of the building. It was proved that the defendant did procure a policy of insurance upon the building, and that the insurance company paid to him the sum of $2,250 as the amount of damage to the building. * * *"

On further appeal of this case to the Court of Appeals said judgment was affirmed (174 N. Y. 518, 66 N. E. 1111) on the opinion of Ingraham, J.

The defendant, however, contends that the affirmance of the judgment for the rent sued for is not res adjudicata to the case at bar (this

will be seen hereafter), but claims that under the statute (Real Property Law [Consol. Laws, c. 50; Laws 1909, c. 52, art. 7] § 227), which provides that "where any building which is leased or occupied is destroyed or so injured by the elements or any other cause as to be untenantable and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the household premises and of the land so leased or occupied, and he is not liable to pay to the lessor or owner rent for the time subsequent to the surrender," he could surrender the possession of the leasehold, and was not liable in case he did not rebuild the premises destroyed by fire. He admits that he did have the premises insured and held a policy of insurance in the amount of $3,000, and, after said premises were destroyed by fire, collected and received from the insurance company the sum of $2,250 in payment of the loss, damage, and injury suffered by plaintiff by reason of said fire. The defendant does not deny the entering into the agreement of July 1, 1887, as aforesaid, or that the conditions thereof were not fully complied with and carried out. It further appears from the facts herein that subsequent to said fire and the collection of the insurance money said defendant erected upon the front of said premises a brick building to the height of one story, with stores, about 25 feet in front and rear and about 50 feet in depth, with a frame addition immediately in the rear of said front building and connected therewith for toilet purposes, about 4 feet square, which premises were thereafter surrendered with the building thereon to said plaintiff about May 1. 1910; that no building was erected immediately in the rear of said new building in place of the frame building destroyed; that said building erected and surrendered to the plaintiff was and is of greater fee and rental value than the frame building destroyed.

The question now arises: Has the defendant complied with the covenants of the lease by the erection of the brick building on the front of said lot to about 50 feet, and not erecting or continuing the front building to the depth of said lot to the dimensions of the lot where the old frame building formerly stood? By the covenants of said lease defendant agreed that he will quit and surrender said premises in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted. Such a covenant has been construed as obligating the lessee not only to keep the premises in as good repair as when he entered thereon pursuant to the lease, but to put, keep, and leave them in good repair, having due regard to the age and class of buildings. The measure of damages in such a case is the necessary cost of making the repairs, and not the difference in the fee value of the building. Lehmaier v. Jones, 100 App. Div. 495, 91 N. Y. Supp. 687. Under this covenant, the defendant was to make ordinary, not extraordinary, repairs, which are to be limited to repairs as such and not to work of restoration or renewal where decay is so extensive as to render repair in the ordinary sense impossible. Ducker v. Del Genovese, 93 App. Div. 575, 87 N. Y. Supp. 889; Street v. Central Brewing Co., 101 App. Div. 3, 91 N. Y. Supp. 547. It does not mean, nor has it been construed, that in case the building was de-

stroyed by fire or the elements so that it could not be repaired that the defendant would be obligated to rebuild. Such a condition would take it out of the ordinary rule, which was not contemplated at the time of the making of the lease. "The tenant is not answerable if the building is accidentally burned down nor bound to rebuild a fallen chimney or replace doors and sashes worn out by time, to put a new roof on the building, or to make similar substantial and lasting repairs, as putting a new roof on the worn-out house, usually called general repairs." 2 McAdam, Landlord and Tenant, § 382, p. 1241. In Smith v. Kerr, 108 N. Y. 31, 15 N. E. 70, 2 Am. St. Rep. 362, it was held:

"Upon the destruction by fire of a structure occupied by a tenant, no obligation rests upon either the landlord or the tenant to rebuild it in the absence of covenants in the lease requiring it to be done. The tenant is, however, at common law liable to pay the rent reserved by the lease so long as any part of the demised premises remains in existence capable of being occupied or enjoyed by the tenant."

What was contemplated in the minds of the parties to the lease under the covenant "that in case of the destruction of the said building by fire or otherwise party of the second part may rebuild the same and erect another building"? When the agreement of July 1, 1887, which is recited in the lease and by the covenants of the lease was entered into, it was apparent that the parties had in mind the contingency which might happen, that is, the buildings may be destroyed by fire, and the insurance loss was to be paid to the lessee, and that in consideration of the premium being repaid to him, as in said lease and agreement expressed, said lessee was to rebuild. No other conclusion can be drawn from said covenant and agreement. It was not the lessee's interest which was insured, but the building; for this contingency the premium was paid to him. There would be no necessity for the lessor to pay to said lessee any premium if there was contemplated in the minds of the parties any other contingency. Parties have a right to make agreements to suit themselves, and it is the duty of the court to enforce them as made, even though a hardship may be worked. Fraud and mistake may entitle a party to relief, but, if neither of these elements exist, the agreement must be carried out to its terms. The defendant had the option to rebuild another building or pay the costs in lieu thereof. As he obligated himself by the terms of the lease to erect another building upon the happening of the fire, and, having failed to do so, the damage would be the costs of erecting a similar building to the one destroyed, taking into consideration the building that has been erected by the defendant on the front of said lot. Under the statute as it now exists, the defendant is prohibited from erecting a frame structure in place of the one destroyed, and the Building Code also provides "that no frame or wood structure shall be built hereafter in the City of New York within what is called fire limits"—the premises in question are within the fire limits as provided by said Code (sections 143, 145, Building Code)—and he would not be obligated to erect a brick building, as now required by the statute, at a sum far in excess of what it would cost for the construction of a frame building. The cost would be based upon facts which have been presented upon

the trial. Plaintiff's experts estimated that the erection of a frame building similar to the one destroyed would cost from $1,500 to $1,750. Defendant's experts estimated that such a building could be erected for the sum of $670 or $720, respectively; that the prices so fixed are based upon the cost of new material, with the exception of the sum of $670, which was the estimate for secondhand material, as good as new. When we take into consideration the old building, which had been standing for a period of 30 years or more, allowing for use and wear thereof, and that the defendant was to surrender at the expiration or the termination of the lease a building similar to the one destroyed, and, on his failure to carry out the covenants of the lease, plaintiff would be entitled to damages sustained by reason of his failure to give him a building. But, as the defendant has failed to erect a building on the rear of said lot, the damages would be the actual cost of the erection of such a building, which I find from the evidence of the experts would be the sum of $720, to be fair and reasonable. As the measure of damages is the same as on a breach of covenant to deliver the premises in good repair, the defendant cannot be compelled to pay more than it would cost to erect a frame building similar to the one destroyed, and, when an action is brought by a landlord for the breach of the lessee's covenant to keep the premises in repair, it has been held, if such action is commenced before the expiration of the term, the measure of damages is the injury done to the reversion; while, if the action is brought after the expiration of the term, the measure of damages is the cost of putting the premises into the state of repair in which the lessee was bound to leave them. Mayne on Damages (6th Ed.) 278; Appleton v. Marx, 191 N. Y. 81, 83 N. E. 563, 16 L. R. A. (N. S.) 210.

Plaintiff also seeks to recover damages for waste in putting up a different structure on the premises other than the one leased. Waste consists of some definite physical injury to the premises leased. This is shown by reference to the earlier definitions, as, for instance, that of Blackstone, who calls it "a spoliation or destruction in house, garden, trees and other corporal hereditaments." 2 Blackstone, Com. (Sherwood's Ed.) 281. On principle it follows that, by the covenant of the lease in the action at bar that said lessee would not make any alterations in the premises, the erection of the building on the front of said lot has been held to constitute waste. Agate v. Lowenbein, 57 N. Y. 604. And it is such, although it may not in its consequence be prejudicial to the landlord. The expression of the chancellor in Winship v. Pitts, 3 Paige, 259, was that the tenant had no right "to make improvements or alterations which will materially and permanently change the nature of the property so as to render it impossible for him to restore the same premises substantially at the expiration of the term." Andrews v. Day Button Co., 132 N. Y. 348, 353, 30 N. E. 831. As it appears in the case at bar, no evidence has been given by the plaintiff that the construction of the building now on said lot different from the original building constitutes waste. The plaintiff has failed to give any proof as to loss of rent that he might have sustained during the time it would take to restore or rebuild the premises to their former state, and the only proof we have on the question is the facts related by the plaintiff

that he was informed by an architect and builder that it would take from seven to ten days to restore the building to its former state.

Plaintiff contends that the decision in the former action for rent, and affirmed in the Court of Appeals, supra, is res adjudicata to the issues involved in the action at bar. From the reading of the decision affirming the judgment of the Trial Term (67 App. Div. 531, 73 N. Y. Supp. 1016, supra), the issues involved here are not the same. As was said in Reynolds v. Ætna Life Ins. Co., 160 N. Y. 635, 652, 663, 55 N. E. 305, 310, Martin, J.:

"It must be regarded as the established law of this state that a judgment is not conclusive in a second action unless the same question was at issue in a former suit of which the court had competent jurisdiction and the subsequent action is between the same parties or their privies. The conclusive character of a judgment as a bar extends only to the identical issues, which were tried in the former action. They must be the same in each action not merely in name, but in fact and in substance, and the party seeking to avail himself of a former judgment as conclusive evidence or as a bar in a subsequent action must show affirmatively that the question involved in the second was material and determined in the former, as a former judgment would not operate as an estoppel in a subsequent action as to immaterial and unessential facts, even though put in issue and directly decided. It is final only as to facts litigated and decided which relate to the issue and the determination of which was necessary to the determination of that issue." Palmer v. Hussey, 87 N. Y. 303; Bell v. Merrifield, 109 N. Y. 202, 16 N. E. 55, 4 Am. St. Rep. 436; Hymes v. Estey, 116 N. Y. 501, 22 N. E. 1087, 15 Am. St. Rep. 421; Lewis v. O., N. & P. Co., 125 N. Y. 341, 26 N. E. 301; Rose v. Hawley, 133 N. Y. 315, 31 N. E. 236; House v. Lockwood, 137 N. Y. 259, 33 N. E. 595; Ward v. Boyce, 152 N. Y. 191, 201, 46 N. E. 180, 36 L. R. A. 549.

Therefore it cannot be asserted that the issues are the same, as the question involved before this court was not adjudicated in the former action and therefore cannot be res adjudicata. When we take into consideration that the defendant has laid out and expended for the erection of the building now on said lot the sum of about $2,600, and the plaintiff would be amply recompensed in the payment of the sum of $720, the costs for the erection of a similar building in the rear of said lot, and by allowing this amount justice is done to the plaintiff herein.

The court therefore awards judgment in favor of the plaintiff for the sum of $720. So ordered.