## WICHITA ROYALTY CO. v. CITY NAT. BANK OF WICHITA FALLS.

### No. 12549.

Court of Civil Appeals of Texas. Fort Worth.

March 7, 1931.

Kilgore & Rogers, of Wichita Falls, for appellant.

Bullington, Humphrey & King, of Wichita Falls, for appellee.

CONNER, C. J.

This is an appeal from an order of a district court of Wichita county appointing a receiver for the properties of the Wichita Royalty Company. The receiver was appointed upon the application of the appellee, the City National Bank of Wichita Falls, in a suit against the appellant, the Wichita Royalty Company, and its sole trustee, E. E. Scannell, in which the appellee sought to recover upon a note for $22,000, dated January 26, 1930, executed by the Wichita Royalty Company and payable to the bank. Recovery was also sought for $14,596, alleged to be due upon a note of $43,000 executed by the Texas Investment Company, a corporation, dated June 9, 1930, and indorsed by the Wichita Royalty Company. To secure the amount due on the $22,000 note, the plaintiff alleged and sought to have foreclosed a deed of trust executed by the Royalty Company, covering specified royalty interests in Young and Limestone counties. It also alleged an equitable lien upon all of

the assets of the association by reason of the declaration of trust creating the joint-stock association.

The plaintiff alleged that the properties of the Royalty Company "are producing oil properties, and are being depleted, that is to say, that oil is being produced therefrom and said properties are being depleted, and said properties and assets, as well as the Wichita Royalty Company should be placed in the hands of a receiver to take charge of, conserve the same, and liquidate the indebtedness pending this litigation; that said receiver is necessary for the reason that said Wichita Royalty Company is insolvent, or is at least threatened with insolvency, and that the said defendant has no ready assets with which to pay its obligations; that E. E. Scannell has been in charge of the books and records of said Royalty Company since its creation, and is a shareholder and trustee and is liable personally along with the Wichita Royalty Company for this indebtedness, and is refusing to apply the proceeds of the oil produced from said properties to the liquidation of this indebtedness."

It was further alleged that the Royalty Company and E. E. Scannell did not have "sufficient assets to pay said indebtedness in the ordinary course of business, and cannot realize or will not within a reasonable length of time realize sufficient assets with which to pay its obligations, and it is in an insolvent condition."

In reply to the application for the appointment of a receiver, the defendant pleaded that it was a trust estate operated under articles of agreement whereby its properties at all times material to the controversy were vested in the trustee for the use and benefit of the numerous stockholders, of all which the plaintiff had notice. It further pleaded, in substance, that the $22,000 note had been executed in renewal of previous notes, and that one George W. Peckham, since deceased, as trustee of the Royalty Company, had complete control of its affairs, and as such directed the bookkeeper of the association to execute checks payable to the order of the plaintiff as pro tanto payments upon the obligations due the bank; that the checks so issued were received by the bank and appropriated to the payment of the independent indebtedness of Peckham; that the aggregate amount of the checks so executed and appropriated was $15,250; that in November, 1927, the association had effected the sale of certain of its mineral interests to the Petroleum Royalties Corporation for a consideration of $6,000; that on the 16th day of February, 1928, the defendant had sold to the American Mineral Spirits Corporation of Chicago an interest in realty for an agreed consideration of $6,000; that both these sums of money had been received by the officers and agents of the plaintiff bank with knowledge of the nature of the fund, notwithstanding which the several sums were illegally credited to the account of said Peckham.

Aside from the insufficiency of the petition, we have carefully read the statement of facts approved by the trial court, and fail to find any sufficient support for the court's order. The court's order vested in the receiver full possession and control, not only of all of the properties of the Royalty Company, but also of its books, bills receivable, etc. It has been uniformly held that a receivership is a harsh remedy, and one that should not be granted except in clear cases. Article 2293 of our Statutes provides that:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases:

"1. In an action by a vendor to vacate a fraudulent purchase of property; or by a creditor to subject any property or fund to his claim; or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

"2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed or materially injured; or that the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt.

"3. In cases where a corporation is insolvent or in imminent danger of insolvency; or has been dissolved or has forfeited its corporate rights.

"4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

It is to be noted that, if the applicant for the appointment of a receiver is a mere creditor under the first division of the article, he must show that "the property or fund is in danger of being lost, removed or materially injured"; if by a mortgagee, under subdivision 2, it is the same, he also must make it appear that "the mortgaged property is in danger of being lost, removed or materially injured." The third subdivision in terms is limited to corporations that are insolvent or in imminent danger of insolvency, or have been dissolved or have forfeited their corporate rights; in all other cases "where receivers have heretofore been appointed by the usages of the court of equity."

The rule of equity, as stated in Story's Equity Jurisprudence, vol. 2, § 1153, p. 532, is that:

"In such cases Courts of Equity will pay a just respect to such legal and equitable rights and interests of the possessor of the fund, and will not withdraw it from him by the appointment of a receiver, unless the facts averred and established in proof show that there has been an abuse, or is danger of abuse, on his part. For the rule of such courts is not to displace a bona fide possessor from any of the just rights attached to his title, unless there be some equitable ground for interference."

The case of Sunshine Consol. Oil Co. v. Prechel, 268 S. W. 1051, by this court, was the case of a corporation. It was therein held that a petition for the appointment of a receiver which contained no allegations of mismanagement or waste, nor allegation which suggested that a receiver, if appointed, could manage and operate property more successfully than could the corporation itself, was insufficient; that an allegation that the business was being run at a loss was a mere pleader's conclusion; and that the petition for the appointment of the receiver which alleged certain indebtedness of the corporation, but did not allege its assets, did not allege sufficient facts to show insolvency.

In another case by this court, to wit, Phœnix Oil Co. v. McLarren, 244 S. W. 830, it was held that a trustee's possession will not be interfered with by the appointment of a receiver, unless there is real danger from his misconduct; and that mere general allegations of dishonesty and fraudulent designs without allegations of specific act do not justify taking property from a trustee and putting it in the hands of a receiver. In that case it was further held that the appointment of a receiver should not be made when there is another and safe remedy, or less stringent means of protecting the property can be found; and, further, that it is within the power of the court of equity to remove a trustee and appoint another.

J. T. Harrell, president of plaintiff bank, testified, among other things, that he was "familiar" with the "assets" of the Royalty Company, and that "they are of less value than the Royalty's debt to the bank." The evidence shows that the Royalty Company owns royalty interests in a number of companies, but the value of the several interests is not shown other than as by the statement of the witness, as we have quoted. It is evident that the statement is very general. No value being stated of any one or more of the several interests, it can hardly be said, we think, that such general statement sufficiently supports an allegation that the Royalty Company is insolvent. But, if it be so conceded, as will be seen from the authorities we have cited, mere insolvency does not justify the appointment of a receiver. In neither allegation nor evidence do we find where the Royalty Company or its trustee Scannell has committed waste. We find numerous definitions of the word "waste" in Words and Phrases, Second Series, Vol. 4, page 1252 et seq. Among them we quote the following:

" 'Waste' consists of some definite physical injury to the premises leased. Lehmeyer v. Moses, 127 N. Y. S. 253, 259, 69 Misc. Rep. 476."

" 'Waste' may be defined as the 'doing of those acts which cause lasting damage to the freehold or inheritance, or the neglect or omission to do those acts which are required to prevent lasting damage to the freehold or inheritance. The term is not an arbitrary one, to be applied inflexibly, without regard to the quality of the estate, or the relation to it of the person charged to have committed the wrong, but the question as to whether it has been committed in a given case is to be determined in view of the particular facts and circumstances appearing in that case.' "

The widest extent that can be given the allegations of plaintiff's petition and of the evidence is that the properties of the association were being "depleted." It is a part of the general history of the country, and we judicially know that a royalty interest constitutes under our decisions realty; that the interest is made fruitful by the owner of the leasehold estate drilling and producing oil, the royalty owner receiving the royalty in oil as produced. While it may be true that the continued production from a given well or wells may deplete in a measure the source of the supply, such depletion certainly cannot be said to be "waste" in the sense authorizing the appointment of a receiver. It is not alleged, nor is it shown, that the trustee or any one of the other members of the trust association are insolvent, or that the trustee Scannell is so acting as to destroy or injure the royalty interests or undertaking any fraudulent disposition of the proceeds, nor does the record show that the receiver can more advantageously conserve the property than the trustee, or that he is threatening to unlawfully dispose of the property; nor does it appear that the plaintiff bank may not, upon a proper showing, attach the properties of the association or sequester the proceeds arising from the sale of the oil.

We conclude that the record wholly fails to show a right in the plaintiff bank to the appointment of a receiver. It is accordingly ordered that the order of receivership be set aside, the receivership vacated, and the costs of the receivership, as well as of this appeal, be taxed against the appellee bank.