**WORTHINGTON et al. v. SUEHS et al.**

No. 9966.

Court of Civil Appeals of Texas. San Antonio.

March 11, 1936.

Rehearing Denied April 8, 1936.

Hal Browne and Neil Beaton, both of San Antonio, for appellants.

O. Kennedy, of Beeville, for appellees.

BOBBITT, Justice.

This is an appeal from an order appointing a receiver. On November 27, 1935, W. F. Suehs and 28 other persons, as plaintiffs, filed their petition in the district court of Bee county, Tex., against R. J. Worthington and L. K. Worthington, as defendants, alleging that the defendants were doing business under the name of Worth Oil Company; and that each of the plaintiffs "and approximately four hundred other persons" held written contracts with defendants on the following identical form, to wit:

"No. ——                    —— Barrels

"Oil Purchase Contract

"This Contract, made and entered into by and between the Worth Oil Company, 1213-1214 South Texas Bank Building, of the County of Bexar, State of Texas, hereinafter known as Seller, and —— of ——, hereinafter known as Buyer,

"Witnesseth:

"First: That, for and in consideration of the sum of —— ($——) Dollars paid in cash said Seller hereby sells and conveys and is to deliver to said Buyer, or his order, —— barrels of crude oil, as, if, and when produced and saved by said Seller from a certain tract of fifty acres out of the 200 acres tract, located about six miles west of Pettus, Texas, in the Aurelia Hadley Survey, described in the Oil and Gas Lease Contract between W. G. Rutledge and wife, Lessors, and R. J.

Worthington, Lessee, dated the 4th day of April, 1934.

"Second: That Seller agrees to begin drilling a well for oil, said well to be known as Seller's No. 1, W. G. Rutledge, on said tract by actually spudding in on or before the fourth day of May, 1934, and, in a faithful effort to discover and produce oil and/or gas in paying quantities, to prosecute the drilling of said well with due diligence to a depth of four thousand (4,000) feet, unless oil and/or gas in such quantities be discovered at a lesser depth.

"Third: That, out of one-half of the first crude oil that may be produced and saved from said fifty acre tract, Seller hereby sets aside Two Hundred Thousand (200,000) barrels to be delivered in the pipe line or storage tanks to which said well and all other wells that may be drilled on said tract may be connected as, if and when produced and saved from said tract, to the credit of the purchase contract holders jointly, in the respective proportions their purchase contracts bear to the entire Two Hundred Thousand (200,000) barrels.

"Fourth: That, in the event oil or gas be discovered in paying quantities in said Seller's well No. 1, Seller further agrees that he will assign to the holders of purchase contracts of said 200,000 barrels of oil (of which this contract is one), an undivided one-half interest in and to the oil and gas lease insofar as it covers a tract of fifty acres of land off-setting the fifty acres on which such well No. 1 is drilled, to be held by them in common in proportions of interest which the number of barrels purchased by them in their respective contracts bear to the whole 200,000 barrels, aforesaid; and Seller agrees that he will drill a well on said off-set fifty acre tract so assigned to them, out of the half interest retained by him and free of costs to them, to the depth from which said well No. 1 is producing in paying quantities, in a faithful effort to find and produce oil and/or gas in paying quantities.

"Fifth: That Seller is to drill on said second added off-set fifty acres tract a well for oil and/or gas to the formation in which production in paying quantities in said Seller's No. 1 well is encountered, this drilling on said added off-set tract to be financed out of the one-half (½) interest retained by said Seller without other or further cost to said contract holders.

"In testimony whereof, this contract is executed in San Antonio, Texas, this ———— day of ————, 1934.

"Worth Oil Company
"By R. J. Worthington
"By L. K. Worthington."

It appears that the contracts of plaintiffs were all executed between March 8, 1934, and October 1, 1935, and provided for varying amounts of oil, ranging from 20 to 1,000 barrels each; and each of the contracts was duly recorded in the deed records of Bee county.

Plaintiffs alleged that on April 15, 1935, defendants completed a well on the easterly 50 acres of the north 100 acres of the lease, described in the contract; that at the time of filing the petition 10,000 barrels of oil had been produced therefrom with a market value of $11,000.

It was further alleged that defendants had executed a written transfer and assignment of the oil and gas lease mentioned in the contract as agreed, in so far as it covered the westerly 50 acres of the north 100 acres, and as described in the lease; and that the same had been recorded in the deed records of Bee county. It was alleged that the defendants had not drilled, nor made preparations for, or begun to drill the second well mentioned in paragraphs fourth and fifth of the purchase contracts. Plaintiffs alleged that 2,000 barrels of the oil produced from well No. 1 had been lost by reason of being stored in earthen tanks and washed away by the rains; that of the oil produced and saved, 4,000 barrels had been sold to Primrose Petroleum Company of Dallas; 1,000 barrels to Phœnix Refining Company of San Antonio; and 800 barrels to Pettus Refining Company of Pettus, Tex.; but that such purchasers, with the exception of the Phœnix Refining Company, had not paid defendants for the oil, because defendants have not had, and do not have, clear title to the oil. It was further alleged that Phœnix Refining Company had paid 75 cents a barrel for the 1,000 barrels delivered to it; and "that said defendants have never accounted to these plaintiffs for said money or any part thereof, to plaintiffs' damage in said amount."

Plaintiffs then alleged that on November 26, 1935, there was recorded in Bee county an abstract of judgment for $1,031.68 in favor of W. P. Lincoln and against the defendants; and that the defendants owe

approximately $1,000 to laborers for work on the oil well, which debts can be fixed as a lien on the oil and gas lease, and that other debts are owing by defendants, which likewise will soon be reduced to judgment, and thereby render it more difficult to market oil produced in said well.

Plaintiffs further alleged that defendants had sold, assigned, and transferred to Conservative Oil Company, a corporation, "said oil and gas lease covering portions of each of the 50 acre tracts, which comprise the north 100 acres, and thereby clouded the title of these plaintiffs thereto as well as said 400 other persons."

It was also alleged that: "Plaintiffs, defendants, and said 400 other persons jointly own said oil and gas lease insofar as it covers the northerly 100 acres of said 200 acre tract; and that they all jointly own and are interested in the crude oil which has been, and that hereafter will be, produced from said Seller's Well No. 1, as well as the sums of money owing for such oil as has already been sold and not collected for, and that they all jointly own and are interested in said Seller's Well No. 1, and that all of such property and funds are in danger of being lost, removed or materially injured."

The prayer was for dissolution of the partnership "heretofore existing between all of said parties," and for the appointment of a receiver of "such property" with full power to operate and protect same; and that after payment of debts and costs, "the proceeds be divided among the parties hereto, according to their respective rights"; and "that plaintiffs have judgment against said defendants jointly and severally for the amount of their said damages," and for general relief.

Upon filing of the petition, the district judge indorsed his fiat on the petition, directing that the defendants be notified to appear on December 3, 1935, to show cause why a receiver should not be appointed as prayed for. Notice was served on the defendants in Bexar county on November 30, 1935, and the defendants entered an appearance at the hearing, and, through their attorney, cross-examined the witnesses offered by the plaintiffs, but filed no answer and offered no evidence in their own behalf, although defendant R. J. Worthington attended the hearing in person. On December 3, 1935, and at the conclusion of the hearing, the court entered an order appointing L. P. Dickinson receiver of the entire oil and gas lease owned by defendants; the Seller's No. 1 well; all well tools and equipment located on the lease; all oil stored on the lease; all funds due and owing for crude oil saved and produced from the north 100 acres of the lease; and all other property belonging or pertaining to said lease in so far as it covered said north 100 acres, "with full power and authority to carry on and conduct all business pertaining to such property."

The order further required the defendants, upon demand, to deliver to the receiver all books of account, minute books, and property of any and all other description belonging to said north 100-acre lease, and said producing well; and required the receiver to execute a bond in the amount of $5,000, and return to the court within 30 days an inventory of all property taken into his possession. On December 5, 1935, the receiver qualified by filing his oath and bond; and thereafter, on December 23, 1935, returned to the court an inventory disclosing the numerous items of personal property taken into his possession. The defendants duly excepted to the order appointing a receiver, and perfected this appeal therefrom.

The parties will hereinafter be referred to as appellants and appellees. Appellants were defendants and appellees, plaintiffs in the lower court.

■ The original petition in this case was not verified, and for that reason it is not sufficient, of course, as evidence, to authorize the appointment of a receiver. It appears from the evidence that on or about April 15, 1935, appellees brought in an oil well on a 50-acre tract on their lease, as they had contracted to do; and that up to December 1, 1935, it had produced a total of 5,678.64 barrels of oil; that it had produced about an average of 70 barrels a day, and at the time of the hearing of this cause was producing only about 25 barrels per day; that the oil so produced and saved has been sold as alleged, but appellants have been paid for only 1,000 barrels of oil, the proceeds of which have not been divided among the numerous holders of the oil purchase contracts; that appellants have had great difficulty in disposing of the oil from the beginning "because of the fact that it would be necessary to have each of the holders of these oil purchase contracts

sign a division order as to the proceeds"; that approximately 1,000 barrels of oil had been lost through evaporation and overflow soon after the well was brought in, because it was stored in earthen tanks; that this was due to the difficulties in marketing the oil, and not in lack of storage facilities, which at present consist of two 1,000 barrel storage tanks, which are adequate for the property.

It appears also from the evidence that appellants had not drilled nor begun the drilling of the offset· well as provided in the contract; but at the time of the hearing this portion of the lease was nonproductive. It further appeared that oil could be moved from the producing well by either pipe line or truck; that at the time of the hearing it was producing 75 per cent. salt water, and for that reason could not be shut in; and at the present time the Primrose Petroleum Company of Dallas is buying from 600 to 700 barrels of the oil per month. It was shown that the appellants have never denied the rights of appellees under the contracts in any particular, and that two meetings had been held in San Antonio, and one in Yoakum, for the purpose of getting the contract holders together and appointing a trustee to act for them in signing a division order and in disposing of their portion of the oil, produced and saved from the property. It further appears that an abstract of judgment against appellants in the amount of $1,031.68 had been recorded in Bee county, as alleged by appellees; and that appellants owed J. G. Higginbotham, the gauger at the producing well, 7 months' salary, at $75 per month.

■ We have made a full and unusually lengthy statement of the pleadings and evidence in this instance, because, in passing on an order appointing a receiver, all facts bearing upon the question should be considered as an entirety. The appellees base their right or claim to a receiver in this case on subdivision 1, art. 2293, R. S. 1925, as follows: "Receivers may be appointed by any judge of a court of competent jurisdiction of this State: * * *

1. In an action * * * between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property

or fund is in danger of being lost, removed or materially injured."

■ It is our opinion and we hold that the facts in this case do not establish the existence of a partnership between the appellees, the appellants, and the some 400 other persons interested in the property. 31 Tex.Jur.Sec. 322, pp. 1040–1042. As a matter of fact, appellees frankly concede this in their brief filed in this court.

The question is then presented, as to whether appellees' joint ownership of the property with appellants and some 400 other persons is sufficient under all the facts and circumstances of this case to authorize or justify the appointment of a receiver of the common property. The proper answer to this question will enable us to determine the validity or invalidity of the order entered by the trial court here under attack.

A careful review of the authorities, and the record before us in this appeal, lead us to the conclusion that the order appointing the receiver herein was not authorized and cannot be justified or sustained. Rosenberg v. Titsa (Tex.Civ. App.) 278 S.W. 896, and authorities cited.

The first item of common property is the "westerly fifty acres out of the north 100 acres of the lease." It is undisputed that a one-half undivided interest in this acreage has been transferred and assigned by appellants to the appellees and "some four hundred other persons," in accordance with the several contracts; the transfers have been duly recorded; the acreage is so far nonproductive; and no proof is made that appellants have in any way violated these contracts with regard to drilling on this part of the lease. One-half of the oil which has been produced and saved is owned by the 29 appellees, and the "some four hundred other persons," and one-half by appellants; but there is no evidence that the oil that was sold and paid for was not properly deducted from appellants' share thereof.

The appellants are required under their contracts to set aside 200,000 barrels of oil, if, as, and when produced "to the credit of the purchase contract holders jointly," by delivering same to pipe line or storage tanks to which the well or wells are connected. They are not required, however, to sell it or even to find a buyer for it. The important problem of inducing the 29 appellees and some 400 other persons to all join in a plan for disposi-

tion of one-half of the oil produced and saved and distribution of the proceeds therefrom is not due to any tort or breach of contract on the part of appellants. The real difficulty inheres in the very nature of the relationship which was voluntarily entered into by appellees, and such cannot be made the basis of or reason for wresting from appellants the possession, management, and control of the entire property, to which appellees have no probable claim or right. They are interested in the oil produced, and only if, as, and when produced.

The order appealed from appointed L. P. Dickinson the receiver of the north 100 acres of the oil and gas lease, dated April 4, 1934, the producing well, and all oil well tools and equipment, and all other property on the lease, without regard to ownership, with full power and authority to take over and carry on the business of appellants. In these respects, and as to this portion of the order, the court clearly acted without jurisdiction.

The facts alleged and proved do not show any necessity for appointing a receiver of the east 50 acres of the north 100 acres of the lease or of the oil produced and saved from the Seller's No. 1 W. G. Rutledge well, or of the claims for oil which have been sold. Furthermore, it is not shown "that the property or fund is in danger of being lost, removed or materially injured." It is not considered that claims as alleged against appellants will attach to any, but appellants', interest in the common property; as the contracts and assignments in which appellees are interested are duly recorded in the appropriate public records of Bee county.

It is probably unnecessary to point out that no attempt was made by appellees to join, either as plaintiffs or defendants, the some 400 other purchase contract holders who are tenants in common with appellees; that neither J. B. Higginbotham, W. P. Lincoln, Conservative Oil Company, or any of the companies who owe for oil, delivered by appellants, are made parties to this suit.

■ It seems clear that this suit is one primarily for the appointment of a receiver to take charge of and operate the business of drilling oil wells and selling the products therefrom, because appellants and appellees appear to be having difficulty in getting the numerous interested owners in a portion of the oil to agree upon a division order which seems necessary to collect for the oil sold. Apparently this is not due to the fault of appellants. Certainly, this condition does not authorize the court, on the complaint of a few of the interested purchasers, to take over the property and business of appellants and operate their business for them. Obviously, this proceeding is not ancillary to the main suit or contention of appellees herein, because they do not claim that they are entitled to a portion of the property. While appellants prayed for a dissolution of the claimed partnership between the parties, it is clear that no such status existed or now exists. As above noted, appellees themselves in their brief in this court admit the nonexistence of the partnership as they first alleged.

Appellees pray for "their said damages," but do not plead a cause of action for damages, nor do they pray for any item or amount of claimed damages which could form the basis of a judgment for damages.

■ It is clear to us, under the pleadings and record herein, that appellees have not brought themselves within the provisions of our statutes authorizing the appointment of a receiver in this suit as a matter of right. Furthermore, they have failed to allege such a cause of action or seek such final relief as will support the application and order for the receiver as ancillary to their suit. This action is in reality, a direct proceeding for the appointment of a receiver to take the management and control of the property involved out of the hands and possession of the principal owners and those now in rightful possession thereof, and place it in another, which, under the pleadings and all of the evidence adduced, cannot be sustained. To authorize such drastic action there must exist, not only the undoubted right on the part of those asking such extraordinary procedure, but the court granting same should be fully convinced, under definite and sufficient pleadings supported by clear and unequivocal proof, that unless such action be permitted the parties will suffer irreparable injury. Neither by pleading nor proof do appellees meet such requirement. Article 2293, R. S. 1925. See Tex.Jur. vol. 36, paragraphs 7, 8, 9, 10, 17, 18, 53, 54, 55, and authorities cited; Alworth et al. v. Morris et al. (Tex. Civ.App.) 19 S.W.(2d) 212; Davis et al. v. Hudgins et al. (Tex.Civ.App.) 225 S.W.

73; Continental Trust Co. v. Brown (Tex. Civ.App.) 179 S.W. 939; Kokernot v. Roos (Tex.Civ.App.) 189 S.W. 505.

It is clear from the record before us that the parties interested in the property here involved are entangled in a business enterprise which causes much inconvenience to all concerned. All of the parties, however, entered the venture, in so far as the record reveals, upon their own free and voluntary act, and in the exercise of their full right and privilege of contract. In the absence of any legal claim or complaint on the part of any interested party, which is not here presented by pleadings or proof, the court must leave the parties as they have voluntarily bound themselves under their own agreements.

The appellants challenge the jurisdiction of the trial court by reason of the inadequacy of appellees' claim, but we hold that the trial court had jurisdiction of the cause, and appellants' contention in this respect is overruled.

Because the trial court was without authority to enter the order appointing the receiver herein, the judgment of such court, to that effect, will be reversed, and the order appointing the receiver set aside, and the receivership vacated. All costs in this court and in the court below, including the costs of receivership, are taxed against appellees.

Reversed and rendered.