## FISHER et al. v. FIRST NAT. BANK OF SAN AUGUSTINE.

### No. 3326.

Court of Civil Appeals of Texas.
Beaumont.

Jan. 15, 1938.

Rehearing Denied Feb. 9, 1938.

Joe J. Fisher, of San Augustine, for appellant.

J. R. Anderson, of Center, and J. R. Bogard, of San Augustine, for appellee.

PER CURIAM.

On the 5th day of October, 1937, appellee, First National Bank of San Augustine, Tex., filed this suit in district court of San Augustine county against F. T. Fisher, operating under the name of Fisher Lumber Company, praying for judgment upon certain promissory notes amounting to the approximate sum of $11,000, and for foreclosure of its mortgage lien upon the following described property:

"Now located and situated in the County of San Augustine, State of Texas, to wit:

"One saw mill and Planing mill attached thereto being situated about 2½ miles a little west of south of the town of San Augustine on the I. E. Roberts farm on land leased for the purpose of operating said mill; same to consist of all machinery, engines, belts, pulleys, shafting and all equipment now complete in said mill and planer; with all buildings, lumber frames, dolley ways and all equipment attached thereto. Also 306,000 feet of lumber on the yard and approximately 600,000 feet of timber standing, growing and being up-

on Jas. Moss, Loudermilk, J. J. Sowell, Wm. White, Van Bibber surveys of land in San Augustine County, Texas. This timber is also covered by deed of trust this day given to secure the indebtedness herein described and this mortgage shall go to and include said timber when cut and removed from said land and manufactured into lumber and cover all lumber manufactured therefrom as fully and completely as if same had already been made into lumber. Also all gin machinery on 3 acres of land near Huntington owned by the undersigned F. T. Fisher. It being understood, stipulated and agreed that the report of sale of said lumber is to be made to said First National Bank of San Augustine as same is sold and accounting given to said bank of said sales and the returns thereon; together with all of the increase of, from and to, the above described property, prior to the full payment of the indebtedness hereinafter referred to."

Appellee also prayed for the appointment of a receiver to take charge of the property covered by its mortgage, to operate and manage it, etc. The defendant answered by demurrers, and by special pleas denying appellee's right to a receivership. G. B. Fisher, with permission of the court, intervened claiming a first mortgage lien on certain property claimed by appellee under its mortgage, and contesting its right to a receiver. On a hearing in chambers on the 18th day of October, 1937, the district judge of San Augustine county granted the receivership as prayed for by appellee, and appointed Jef Davis receiver; the receiver qualified and took charge of the property impounded by the court's order. From this order, G. B. Fisher has duly prosecuted his appeal to this court.

■■■ The order granting the receivership and appointing the receiver is without support, and, therefore, erroneous, for the following reasons:

First. The statutory facts do not exist, authorizing the receivership. Article 2293, R.S.1925, in part reads as follows:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases: * * *

"2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed or materially injured; or that the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt."

The failure of F. T. Fisher to pay his notes to appellee as they matured was the only condition of the mortgage breached by him, under the statute. He and intervener, G. B. Fisher, in charge of the sawmill and the mortgaged property, were taking due care of this property. Under no theory of the evidence was the issue raised that a receiver could look after and protect property to a greater extent than the care exercised by the Fishers. Because of the conditions of the sheds, appellee contended by its testimony that the Fishers were not able to carry adequate fire insurance for its protection; it was not shown that the receiver could remedy this condition. Appellee also contended that Fisher had not made due report of the sales of his lumber, as required by the mortgage. The evidence was to the effect that he reported the condition of his business, and furnished appellee stock sheets, when requested; that the proceeds of the sale of the lumber were deposited with appellee; and that it, from repeated inspections by its officers, knew the condition of Fisher's business, and the details of his operations. There was no suggestion in the evidence that Fisher had acted in bad faith or in fraud of appellee's rights, or was threatening to do anything in violation of the conditions of the mortgage. It was also contended by appellee that Fisher had dissipated the lumber covered by its mortgage, and cut subsequently from timber covered by its mortgage. The evidence was that about 150,000 feet of this lumber was sold by Fisher in his current trade, and the balance of it was dressed lumber, stacked ready for sale in the dry sheds; that about 400,000 feet of the timber was still standing as when the mortgage was executed; that 200,000 feet of the timber had been manufactured into lumber, of which about 100,000 feet was sold to the government for making dipping vats and the balance used in making improvements to the mill; that appellee knew of these sales and advised the construction of the mill improvements. Appellee also contended that Fisher had refused to operate his mill at certain times, and had not been diligent in the sale of his lumber. The evidence was that he had exercised good business judgment in these respects. In Kottwitz v. Jehn, Tex.Civ.App., 6 S.W.2d 209, the

court said: "Where * * * evidence failed to show that any property of estate was in danger of being lost, removed, or materially injured by executor, held, that appointment of receiver was error."

In Massad v. Wilson, Tex.Civ.App., 83 S.W.2d 806, it was said: "To obtain appointment of receiver under statute, plaintiff must show, not only interest in property, and defendant's past wrongful management thereof, but present danger of property being lost, removed, or materially injured unless receiver is appointed." See, also, Worthington et al. v. Suehs et al., Tex.Civ.App., 93 S.W.2d 220; Davis v. Hudgins, Tex.Civ.App., 225 S.W. 73; Massey v. Greenwood, Tex Civ.App., 56 S.W.2d 1103; Duncan v. Thompson, Tex. Civ.App., 25 S.W.2d 634; Turnbow et al. v. Bishop et al., Tex.Civ.App., 71 S.W.2d 918; Patton v. State, Tex.Civ.App., 62 S. W.2d 381; Ferguson v. Dickinson, Tex. Civ.App., 138 S.W. 221; Wichita Royalty Co. v. City National Bank, Tex.Civ.App., 36 S.W.2d 1057. A receivership is a drastic and harsh remedy, and, under the jurisprudence of this state, should not be ordered by the court except under the principles of law announced by the cited cases.

■ Second. Appellee had an adequate remedy at law, on its allegations that Fisher was threatening to injure or remove the mortgaged property. It is the law of this state that a receiver will be appointed to take control and possession of property from one lawfully in possession "only where there is no other adequate remedy." Duncan v. Thompson, Tex.Civ.App., 25 S.W.2d 634; Rosenberg v. Titsa, Tex. Civ.App., 278 S.W. 896; Phoenix Oil Co. v. McLarren, Tex.Civ.App., 244 S.W. 830.

■ Third. If appellee's mortgage covers all the lumber on the yard, about 1,000,000 feet, which was the theory of the judge in appointing the receiver, then the mortgaged property was of value more than double the amount of appellee's debt. In 36 Tex.Jur. 49, it is said: "A receiver should not be appointed where the value of the mortgaged property greatly exceeds the debt secured." See, also, Rogers v. Southern Pine Lumber Co., 21 Tex.Civ. App. 48, 51 S.W. 26; Bryan v. Dallas Joint-Stock Land Bank of Dallas, Tex. Civ.App., 66 S.W.2d 779; Ward v. Lissner, Tex.Civ.App., 85 S.W.2d 340.

Appellant strenuously contends, and on the face of the record before us this contention is correct, that appellee's mortgage covers only the 150,000 feet of lumber in the dry sheds, the balance of the lumber that was on the yard when the mortgage was executed. In view of the disposition we have made of the case, we do not further review this contention.

It follows that the order appointing the receiver was erroneous; it is therefore ordered that he be discharged and that the property be returned to the possession of F. T. and G. B. Fisher.